**Ray JIMISON and Ethel Jimison, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 537.

United States District Court
D. Montana,
Billings Division.

May 3, 1967.

---

**3.** This statement is: "Ours is a poor county and we are doing good to have one Jury term a year."

McDonough & Cox, Glendive, Mont., and Gene Huntley, Baker, Mont., for plaintiffs.

Moody Brickett, U. S. Atty., Butte, Mont., and Clifford E. Schleusner, Asst. U. S. Atty., Billings, Mont., for defendant.

## OPINION

JAMESON, Chief Judge.

This action was brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346 (b) and 2671–80 [1] to recover damages for personal injuries sustained by the plaintiff Ethel Jimison and property damage sustained by both plaintiffs in an automobile collision on July 15, 1963.

The accident occurred about midday on a bridge across the Missouri River on U.S. Highway No. 16, three miles south of Culbertson, Montana. The weather was clear and dry, and the visibility good. Highway No. 16 is an asphalt paved two lane highway, 21 feet in width. The bridge is paved with concrete, and where the highway crosses the bridge, it narrows to 20 feet in width. The bridge itself, extending in a north-south direction, has three sections. The northerly and middle sections are each 383 feet in length and have overhead steel spans. The southerly section is 355 feet long and is not covered by an overhead span.

From the south end of the bridge, the highway is straight for 2100 feet with a slight elevation toward the south, at which point there is a curve in the road. For this distance at the very least, the view to the bridge is unobstructed. From the end of the most northerly section of the bridge, there is a 52 foot uncovered portion of the bridge and several hundred feet of roadway to the north where there is another curve.

On the day of the accident, Clifford Ramsbacher, an employee of the defendant United States, was collecting stream flow data pursuant to his employment by the United States Geological Survey. The data is collected by means of a device lowered into the water on a cable suspended from a vehicle called a bridge crane. The crane's exterior dimensions are approximately four feet square, and it is painted a bright orange color. Ramsbacher had begun measuring the river late in the morning and at the time of the accident the bridge crane was positioned near the center of the middle section of the bridge (the more southerly of the covered spans) next to the railing in the northbound lane of traffic. Ramsbacher testified that before he commenced the measuring operation, he had placed "Men Working" signs which were about 18 inches square, to the north and south of his position on the bridge. One sign was placed at the north end of the north 52 foot uncovered section, and the other at approximately the center of the most southerly section of the bridge.[2]

---

1. Section 1346(b) confers jurisdiction upon the district courts "of civil actions on claims against the United States, for money damages, * * * for injury or loss of property, or personal injury * * * caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred".

2. Although other witnesses testified that they saw no signs, the highway patrolman who investigated the accident, Robert Marshall, verified that such signs were placed, although their exact location is disputed.

The plaintiff Ethel Jimison was a passenger in a 1957 Chevrolet four door sedan proceeding in a northerly direction and driven by her son Jerry. The automobile was owned by Mrs. Jimison and her husband, Ray Jimison. Mrs. Jimison was sitting in the front seat with Jerry. Her mother and other children were in the rear seat.

Four to seven miles south of the bridge, the Jimison automobile passed a 1950 Buick driven by Tony Bucciarelli. The Jimison automobile was traveling 60 to 65 miles per hour and the Bucciarelli car was traveling 50 to 55 miles per hour.

Several minutes later the Jimison car rounded the curve in the highway approximately one-half mile from the bridge. As the car came around the curve, Jerry Jimison noticed a "speck" on the bridge ahead.[3] When he was approximately 700 feet from the south end of the bridge, or more than 1200 feet from the bridge crane, he could distinguish Ramsbacher and a "box" in his lane of traffic on the bridge. He slowed his automobile to 25 or 30 miles per hour. As he was slowing, he also noticed two large seismograph water trucks coming down the incline on to the north end of the bridge and realized that he would not have enough room to pull into the southbound lane of traffic and pass Ramsbacher and his machine. At this time Ramsbacher raised his hand toward the Jimison car, and Jerry Jimison brought it to a stop about 60 feet south of the bridge crane. During the stopping sequence Jerry Jimison was "riding" the brake, and had his foot continuously on the

brake pedal for some 900 feet before he stopped. The brake lights on the Jimison automobile were in good working condition.

Within a few seconds [4] after the Jimison automobile was brought to a full stop, the car driven by Bucciarelli collided with the rear of the Jimison vehicle.

Ramsbacher noticed the Jimison and Bucciarelli vehicles shortly after they rounded the curve to the south of the bridge. He watched them intermittently as they approached, and then noticed the two trucks coming down the incline to the north of the bridge. He then signaled to the Jimison vehicle. The trucks did not pass, but stopped to the north of the bridge crane until after the accident.

Bucciarelli first noticed the Jimison vehicle when it passed him several miles south of the bridge. He testified that he did not see it again until he was at the southerly end of the middle section or southernmost covered span of the bridge, some 130 feet from where the Jimison vehicle was stopped. Until this time, he did not see any brake lights, the Jimison car, the bridge crane, Ramsbacher or the trucks; and he was traveling at 55–60 miles per hour. Bucciarelli applied his brakes and tried to stop, but realized that he could not [5] and pulled out to pass the Jimison vehicle. He then saw the trucks at the opposite end of the bridge, turned back into his own lane of traffic, and struck the Jimison automobile in the left rear.

Plaintiffs contend that defendant was negligent as a matter of law in parking the crane on the bridge; [6] that it ob-

3. Jerry Jimison estimated that he was three-quarters of a mile away when he saw the "speck" on the bridge. Ramsbacher testified that he saw both the Jimison and Bucciarelli cars when they were approximately three-fourths of a mile away.

4. Ramsbacher testified it could have been four or five seconds. Mrs. Jimison estimated five to ten seconds.

5. There was expert testimony that the stopping distance of a 1950 Buick with good tires and brakes, traveling 55 miles

per hour on well traveled concrete, would be 261 feet, including reaction time.

6. Plaintiffs rely upon a violation of section 32–21–101 R.C.M.1947, which provides:
    "(a) No person shall stop, stand, or park a vehicle, except when necessary to avoid conflict with other traffic or in compliance with law or the directions of a police officer or highway patrolman or traffic-control device, in any of the following places: * * *
    13. Upon any bridge or other elevated structure upon a highway * * *"

structed the highway and failed to give adequate warning through signs or flagmen;[7] and that its negligence was a proximate cause of the collision.

The defendant contends that even though its employee may have been negligent, his negligence, if any, was not the proximate cause of the collision and was superseded by the intervening negligence of Bucciarelli.

In Montana, a proximate cause is one " 'which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred.' " Sztaba v. Great Northern Railway Co., 1966, 147 Mont. 185, 195, 411 P.2d 379, 385; Merithew v. Hill, D. Mont.1958, 167 F.Supp. 320, 327.

There are no Montana cases directly in point. There are cases, however, which have determined the proximate cause of a collision where a moving vehicle strikes a parked vehicle or other obstruction on the highway. The rules followed in these cases assist the court in determining the proximate cause of this accident.

In Boepple v. Mohalt, 1936, 101 Mont. 417, 54 P.2d 857, the plaintiff was injured while riding as a passenger in an automobile owned and driven by her husband, when it collided with a road grader owned by the State of Montana and operated by one of its employees. The grader was headed in an easterly direction, upon its left or north side of the road, and was brought to a stop just before the collision. Plaintiff and her husband both testified that they did not see the grader until it was too late to avoid the collision. In reversing a judgment for the plaintiff and holding that the district court should have granted a directed verdict in favor of the defendant, the court said in part:

"Applying these rules to the facts as disclosed by the evidence in the instant case, we are forced to the conclusion that Boepple could have seen the grader in ample time to have avoided the collision if he had been keeping a proper lookout ahead, in the manner admonished by law. * * *

"Since the evidence shows conclusively that Boepple could have seen the grader at a distance of at least 239 feet if he had been looking ahead as he should have done, he cannot now be heard to say that he did not see it. Under such circumstances, he is, in legal effect, in the position of having actually seen the grader at that distance. (Citing cases) * * *. 'Moreover, a person is presumed to see that which he could see by looking. * * * The duty to keep a lookout includes the duty to see that which is in plain sight.'

\* \* \* \* \* \*

"Obviously, the sole and proximate cause of the accident here was Boepple's failure to observe and comply with the above requirements, which the law imposes on him. * * *

"Since, as we have pointed out, the proximate cause of the accident was Boepple's failure to keep a proper lookout, it follows that there is no merit or force in plaintiff's allegations of negligence with respect to defendant's failure to operate the grader upon the right side of the road and his failure to use sufficient and adequate signs and warnings. Even if it were true that defendant was negligent in these particulars, still it is manifest from what we have said already that such negligence was not the proximate cause of the accident; hence such negligence, even if proved, could avail the

---

7. Plaintiffs rely upon a violation of the Manual on Uniform Traffic Control Devices For Streets And Highways, issued By The Bureau Of Public Roads, which provides in part, "Where normal open highway speeds prevail in the approach to the work site, advance warning signs should be placed at least 750 feet in advance of the condition to which they are calling attention." (Section 5B–3).

plaintiff nothing. * * *" (101 Mont. 434–436, 54 P.2d 861).[8]

In Fulton v. Chouteau County Farmers' Co., 1934, 98 Mont. 48, 69, 37 P.2d 1025, a motorist stopped his vehicle on the highway to see if he had done any damage to another vehicle which was blocking the roadway. He was struck by a following vehicle several minutes later. The court held that the stopped plaintiff was not required to "anticipate that the driver of an on-coming car will not see that which is plainly before him, or drive with his car so out of control that he cannot stop when he does see the obstruction, or person, in the line of his travel, when, ordinarily, he would have plenty of time and space within which to avoid the injury."

■ The rule that a motorist is "presumed to see that which he could see by looking" and "is, in legal effect, in the position of having actually seen" an obstruction has been followed consistently by the Montana Supreme Court in numerous decisions subsequent to Boepple v. Mohalt. See Monforton v. Northern Pacific Railway Co., 1960, 138 Mont. 191, 209, 355 P.2d 501, and cases there cited.[9]

The general rules with reference to the effect of an intervening force as a superseding cause are found in Restatement, Torts 2d §§ 440–453. Section 440 defines a superseding cause as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." Section 441 defines an intervening force as "one which actively operates in producing harm to another after the actor's negligent act of omission has been committed."

Section 442 lists considerations which are of importance in determining whether an intervening force is a superseding cause of harm to another:

"* * *

"(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

"* * *

"(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

"(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

"(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion."

■ If the intervening act of the third person is foreseeable or a normal consequence of the situation created by the actor's conduct, it is generally not a superseding cause of the harm to the person injured. Restatement, Torts 2d §§ 443, 447. See also 1 Blashfield Automobile Law & Practice §§ 53.5 and 53.6, 60 C.J.S. Motor Vehicles § 252 et seq.; Anno. 100 A.L.R.2d 942.

Under a different factual situation this court had occasion to consider the effect of an intervening force as a superseding cause in Merithew v. Hill, 1958, 167 F.Supp. 320, 329, quoting with approval the following statement from American Jurisprudence:

"'* * * One who acts negligently is not bound necessarily to anticipate that another person will be negligent after

---

8. It will be noted that this case did not involve a question of contributory negligence. There was no suggestion that her husband's negligence was imputed to plaintiff. Rather the court found that the husband's negligence was the "sole and proximate cause of the accident".

9. The Montana case of Burns v. Fisher, 1957, 132 Mont. 26, 313 P.2d 1044, 67 A.L.R.2d 1, upon which plaintiffs rely, is not in point. There the "deceased had remained seated in a truck that was stalled on the highway without placing any flares as a warning". It was held that the "overtaking defendant truck driver who crashed into truck after being temporarily blinded by lights of approaching automobile, was not guilty of any negligence proximately contributing to drivers death." (From Syllabus).

the latter has discovered the danger arising from the former's negligence. The first actor, however, is not permitted to assume that the second actor will discover the danger caused by the first actor's negligence. Accordingly, where the second actor, after having become aware of the existence of a potential danger created by the negligence of the first actor, acts negligently in respect of the dangerous situation and thereby brings about an accident with injurious consequences to others, the first actor is relieved of liability, because the condition created by him was merely a circumstance and not the proximate cause of the accident. However, if the second actor does not become apprised of the danger arising from the first actor's negligence until after his own negligence, added to the existing peril, has made an accident with injurious consequences inevitable, both actors are liable, since the negligence of the one concurs with the negligence of the other proximately to cause the injury.' 38 Am.Jur. 731, Negligence § 72." [10]

Both parties agree with the general rules stated above. Plaintiffs agree further that if Bucciarelli had *actually seen* the obstruction on the highway, had time to stop, and did not do so, his negligence would be a superseding cause and there would be no liability.[11] They contend, however, that Bucciarelli's negligence was not a superseding cause in view of his testimony that he did not see and was not otherwise apprised of the obstruction in time to bring his vehicle to a stop. On the other hand, defendant contends that where as here, under the un-

disputed facts, Bucciarelli *should have seen* the crane and the Jimison car, had ample time to stop, and failed to do so, the defendant is relieved from liability by Bucciarelli's superseding negligence. The authorities are in conflict. The result in many cases has depended upon the factual situation presented.

Velasquez v. Greyhound Lines, Inc., 1961, 12 Utah 2d 379, 366 P.2d 989, was an action for injuries sustained by the passenger of a bus which collided with the rear of a semi-trailer stopped on the side of the highway. After a jury verdict against both defendants, the district court granted judgment n. o. v. in favor of the trailer owner. In affirming, the Supreme Court held that the negligence of the bus driver was the sole proximate cause of the collision. The court said in part:

> "In determining whether the negligence in creating a hazard (Interstate's parking the truck) was a proximate cause of the collision, this is the test to be applied: did the wrongful act, in a natural and continuous sequence of events which might reasonably be expected to follow, produce the injury. If so, it can be said to be a concurring proximate cause of the injury even though the later negligent act of another (Greyhound) cooperated to cause it. On the other hand, if the latter's act of negligence in causing the collision was of such character as not reasonably to be expected to happen in the natural sequence of events, then such later act of negligence is the independent, intervening cause and therefore the sole proximate cause of the injury." (366 P.2d 991, 992).

---

10. The driver of an oncoming vehicle had testified that he did not see a "snow cloud" or become aware of the hazard until it was too late to avoid the accident. In holding that this driver's negligence was a proximate cause of the accident, the court said in part: "While he testified that he did not see the snow cloud until he was alongside the truck, in the exercise of ordinary care he should have seen it for an appreciable distance * * *." "This is not a case where the other drivers

were suddenly confronted with a dangerous condition * * *." (167 F.Supp. at 329, including note 15).

11. In their reply brief counsel for plaintiffs agree that, "If he (Bucciarelli) did see the obstruction and had time to stop but did not do so, then, of course, the negligence of the one obstructing the highway would no longer be a factor in the collision."

In Velasquez the court relied upon the rule of foreseeability set forth in the prior Utah case of Hillyard v. Utah By-Products Co., 1953, 263 P.2d 287, where the court said:

"In applying the test of foreseeability to situations where a negligently created pre-existing condition combines with a later act of negligence causing an injury, the courts have drawn a clear-cut distinction between two classes of cases. The first situation is where one has negligently created a dangerous condition [such as parking the truck] and a later actor observed, or circumstances are such that he could not fail to observe, but negligently failed to avoid it. The second situation involves conduct of a later intervening actor who negligently failed to observe the dangerous condition until it is *too late* to avoid it. In regard to the first situation it is held as a matter of law that the later intervening act does interrupt the natural sequence of events and cut off the legal effect of the negligence of the initial actor. This is based upon the reasoning that it is not reasonable to be foreseen nor expected that one *who actually becomes cognizant* of a dangerous condition in ample time to avert the injury will fail to do so. On the other hand, with respect to the second situation, where the second actor fails to see the danger in time to avoid it, it is held that a jury question exists, based on the rationale that it can reasonably be anticipated that circumstances may arise wherein others may not observe the dangerous condition until too late to escape it. The distinction is basically one between a situation in which the second actor has sufficient time, after being charged with knowledge of the hazard, to avoid it, and one in which the second actor negligently becomes confronted with an *emergency* situation." (263 P.2d at 292).[12]

See also Nyman v. Cedar City, 1961, 12 Utah 2d 45, 361 P.2d 1114 and Koff v. Johnson, 1965, 1 Ariz.App. 196, 401 P.2d 150, both of which quote the foregoing rule.

As noted supra, there are cases which support plaintiffs' contention that the first actor is not relieved of liability unless the second actor actually sees or is otherwise apprised of the dangerous condition created by the first actor in time, by the use of due care, to avoid the collision. See e. g., Kline v. Moyer, 1937, 325 Pa. 357, 191 A. 43, 111 A.L.R. 406; Medved v. Doolittle, 1945, 220 Minn. 352, 19 N.W.2d 788; Northern Indiana Transit v. Burke, 1950, 228 Ind. 162, 89 N.E.2d 905, 17 A.L.R.2d 572; Coursey v. Morgan Driveway, Inc., 6 Cir. 1966, 366 F.2d 504; Eberhart v. Abshire, 7 Cir. 1946, 158 F.2d 24; Anno. 111 A.L.R. 412.[13]

■ Moreover, the cases are uniform in holding that the first actor is not relieved of liability when the second actor is confronted with an "emergency", such as the presence of fog,[14] icy road conditions,[15] or other obstructions to vision.[16] There is no evidence of any "emergency" in this case.

The rules set forth by the Montana court in Boepple v. Mohalt, supra, (and followed in many subsequent cases) that a "[motorist] is presumed to see that which he could see by looking" and "in

12. Under a different factual situation it was held in Hillyard that the prior negligence could reasonably be found to be a concurring proximate cause of the collision.

13. It should be noted, however, that in many of these cases the question presented was whether there was sufficient evidence to make an issue of fact for the jury. They do not consider expressly the effect of a case where, under the undisputed facts, the circumstances are such that the second actor could not fail to observe the obstruction.

14. McFee v. Harker, Wis.1952, 52 N.W.2d 381; Rovinski v. Rowe, 6 Cir. 1942, 131 F.2d 687.

15. Krumvieda v. Hammond, 1947, 71 S.D. 544, 27 N.W.2d 583.

16. Thornton v. Eneroth, 1934, 177 Wash. 1, 30 P.2d 951; Walker v. Stecher, 1944, 219 Minn. 152, 17 N.W.2d 317.

legal effect, [is] in the position of having actually seen" an obstruction which is clearly visible, is in line with the rule of foreseeability set forth by the Utah court in Hillyard·(and subsequent cases) that the first actor is relieved of liability when the second actor "observed, or circumstances are such that he could not fail to observe", but negligently failed to avoid the collision.

■ Bucciarelli's testimony that he did not see the crane or Jimison car until he was on the bridge is simply incredible. In any event, it is obvious from the testimony of Jerry Jimison and Ramsbacher, as well as the physical facts, that Bucciarelli had a clear, unobstructed view of both the car and crane for at least half a mile.[17] Under the Montana law it was his duty to "see what is in plain sight," and in legal effect he is in the position of having actually seen the obstruction in ample time to avoid the collision. Under these circumstances neither Ramsbacher nor the Jimisons were obliged to foresee or anticipate that Bucciarelli would would drive his automobile into the rear of the stopped Jimison car.

■ Bucciarelli's negligence was the sole proximate cause of the accident. His actions constituted an intervening force which was a superseding cause of the accident, precluding any negligence of Ramsbacher from being a proximate cause of the accident.[18]

This opinion may be considered as findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, although either of the parties may submit for consideration more specific findings of fact and conclusions of law consistent with this opinion. Plaintiff will prepare, serve and lodge form of judgment pursuant to Rule 11 of the local rules of court.

---

17. It is approximately 2100 feet from the north end of the curve to the south end of the uncovered span of the bridge, and over 500 feet from that point to the crane.

18. Moreover, under the circumstances here present, there is nothing Ramsbacher could have done to prevent the accident.

Since Bucciarelli did not see the Jimison vehicle, the orange bridge crane, the approaching trucks or Ramsbacher, all of which were clearly visible in time to avoid the accident, it can hardly be contended that he would have noticed the "Men Working" sign had it been placed a few hundred feet farther south.