No. 13904

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

NANCY McALPINE, individually and as
a personal representative,

Plaintiff and Appellant,

-vs-

ROGER DAHL, d/b/a DAHL'S WRECKING
SERVICE, MIDLAND ELECTRIC CO., and
the STATE OF MONTANA,

Defendants and Respondents.

Appeal from: District Court of the Eighth Judicial District,
Honorable H. William Coder, Judge presiding.

Counsel of Record:

For Appellant:

John C. Hoyt argued and Tom Lewis argued, Great Falls,
Montana

For Respondents:

Marra, Wenz, Iwen and Johnson, Great Falls, Montana
David Hopkins argued, Great Falls, Montana
Cure and Borer, Great Falls, Montana
Edward W. Borer argued, Great Falls, Montana

Submitted: May 2, 1978

Decided: NOV 3 1978

Filed: NOV 3 1978

*Thomas J. Kearney*
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Plaintiff appeals from an order of the District Court in Cascade County granting summary judgment for defendants in a wrongful death action.

Plaintiff, Nancy McAlpine, brought the action for wrongful death of her husband against defendants on July 1, 1975. Almost two years later, after extensive discovery defendants moved for summary judgment. On May 16 and May 28, 1977, summary judgment was granted to each defendant in a brief order which did not set out the basis for the ruling. The facts giving rise to this controversy follow.

On April 27, 1975, Midland Electric dispatched a pickup truck and five-wheel gooseneck trailer driven by Arthur Krueger from Billings to Shelby. The truck and trailer had four breakdowns, the final one occurring about 9:30 p.m. as the truck traveled westward on a two-lane stretch of Highway 89, approximately eleven miles east of Great Falls on Mehmke Hill. According to highway plats, the hill crests approximately 3,000 feet east of where the disabled truck stopped, makes a sweeping right to left curve around the hill, turning about thirty-five degrees total and straightening out approximately where the accident occurred.

Krueger had no flares or other warning devices, but passing motorists loaned him three reflectors, which were placed approximately 100, 200 and 300 feet to the east behind the trailer. Within twenty minutes Highway Patrolman James Coey arrived. Coey parked his patrol car just east of the disabled vehicle. He and Krueger sat in the patrol car and talked for thirty to forty minutes. Coey radioed Dahl's Wrecking Service and instructed Dahl to tow the disabled rig eastward toward an approach some 300 feet away. Coey gave

-2-

Krueger a fusee and left the scene shortly before Roger
Dahl of Dahl's Wrecking Service showed up.

Roger Dahl, assisted by his stepson Ronald Mammen,
fastened the back end of the trailer and, without placing
additional warning devices on the highway, proceeded to
tow the rig backwards about four miles per hour eastward
in the westbound lane toward the approach.  Dahl hitched
the trailer in such a way that it protruded about four feet
further into the westbound lane than the wrecker.  A rotating
beacon on top of the wrecker, wrecker clearance lights and
emergency flashers on the truck were in operation.

Dahl had towed the trailer and truck about 150 feet
toward the approach when a westbound 1974 Datsun driven by
Michael Hofer approached the scene, passed the wrecker
closely to his right and slammed into the back end of the
trailer.  Hofer and occupant Dan McAlpine, were killed
instantly.  McAlpine, owner of the car, had employed Hofer
as a farm hand the previous Friday.

Post-mortem blood samples indicated the driver, Hofer,
had a blood alcohol content of .09 percent and McAlpine .14
percent.  There is also evidence that the car in which the
two were riding was traveling seventy to seventy-five miles
per hour at the time of impact.

Individuals deposed during discovery included Dennis
James, a motorist who came upon the scene immediately before
the accident; Leroy Hall, who passed by just after the
accident and had been overtaken by the Hofer vehicle at an
estimated seventy to seventy-five miles per hour about two
or three miles from the scene; Kevin McGuire, who next drove
by the accident and who had been passed by the Hofer vehicle
twenty miles earlier at an estimated eighty miles per hour;
and Charles Niswanger, who next passed by the accident and

who had been overtaken by the Hofer vehicle forty miles earlier at an estimated seventy to seventy-five miles per hour.

James testified that when he came over the hill just east of the accident site, immediately before the accident, he was "blinded" by the headlights of the wrecker and had difficulty passing it. He also stated, however, he saw the beacon and flashers, and proceeded safely around the wrecker at about twenty miles per hour. James called the highway patrol the next day to complain about the "blinding" headlights of the wrecker. The other witnesses testified they saw the beacon and flashers at least a half-mile away from the scene. Roger Dahl, driver of the wrecker, testified his headlights beamed higher than usual because of the weight of the truck and trailer in tow, but that he did not turn his headlights on until after the accident occurred.

Plaintiff contends there was a genuine issue of material fact precluding summary adjudication.

This Court is especially cautious in reviewing grants of summary judgment on questions of negligence. The issues involved are generally considered not susceptible to summary judgment and better resolved by trial. Mally v. Asanovich (1967), 149 Mont. 99, 423 P.2d 294.

The objective of a hearing on motion for summary judgment is to determine if the facts have been established beyond reasonable controversy rather than to reconcile factual issues. 6 Moore's Federal Practice §56.11 at 56-197.

Plaintiff contends that genuine issues of material fact remain unresolved. She alleges negligence per se was committed by Midland Electric in violating sections 32-21-151 (duty to carry flares or emergency reflectors); 32-21-152(b) (duty to place warning devices at least 500 feet from vehicle disabled

-4-

within 500 feet of curve); and 32-21-154, R.C.M. 1947, (duty to keep truck in safe mechanical condition). She contends the conduct of Midland Electric was wanton and reckless by dispatching an overloaded truck and trailer, and by proceeding down the highway after several breakdowns, in total disregard of the safety of others. She also alleges the State's conduct was reckless and wanton because the patrolman did not fulfill his duty to prevent accidents by not staying with the disabled vehicle, by not insuring the road was properly marked and by giving improper towing instructions to Dahl. In sum, she concludes the conduct of each of the defendants concurred in proximately causing the accident and injury.

Although Midland Electric and the State deny negligence, they also contend that Hofer's negligence was an intervening (superseding) sole proximate cause of McAlpine's death. They contend the driver, Hofer, was negligent per se in speeding (section 32-2144(3), R.C.M. 1947), failing to yield the right of way to an emergency vehicle (section 32-2175, R.C.M. 1947) and in failing to keep a proper lookout. Boepple v. Mohalt (1936), 101 Mont. 417, 54 P.2d 857. In arguing that Hofer's negligence was a superseding cause of the accident, they contend they could not foresee his negligent conduct.

The District Court granted its summary judgment order without explanation. We can only assume defendants' argument prevailed and the District Court determined that driver Hofer's conduct was the sole proximate cause of the accident. Accordingly, we focus our attention on the threshold question of whether Hofer's conduct in driving the automobile was as a matter of law the sole proximate cause of the accident and resulting death.

-5-

Plaintiff contends its allegations of willful and wanton conduct on the part of Midland Electric and the State create material issues of fact. Assuming, arguendo, that Hofer was negligent, plaintiff argues it cannot be concluded as a matter of law that Hofer was the sole proximate cause of the collision. Plaintiff also contends the negligence of Hofer, could not, as a matter of law, be imputed to McAlpine. We need not and cannot however, decide the issue of imputed negligence in this appeal. Rather, we confine our opinion as to whether Hofer's conduct was the sole proximate cause of the accident.

Plaintiff's contention on the issue of Hofer's negligence turns on recognized distinctions between the conduct of actors confronted by a dangerous situation created by another's negligent conduct. See Jimison v. United States (D.C. Mont. 1967) 267 F.Supp. 674, 679; 57 Am Jur 2d Negligence §333. In the context of this case, where the second actor (Hofer) becomes aware of the potential danger and acts negligently, resulting in his loss, he is held liable under the theory that the first actor's (defendants Midland Electric, the State of Montana and Dahl's Wrecking Service) conduct merely furnished the circumstances for the accident and was not the proximate cause. Where, however, the second actor's (Hofer's) negligence occurs without awareness of the danger, adding to existing peril, his conduct is said to concur with the first actor's (defendants') negligence in proximately causing the loss. The distinction is crucial. If the second actor (Hofer) saw or should have seen the danger and negligently failed to avoid it, his conduct is held an unforeseeable intervening cause (superseding cause) cutting off liability in the first actor (defendants) as a matter of law. However, if the second actor's negligence (Hofer's) occurs without knowledge of the dangerous condition created by the first actor (defendants) a jury question exists on the issue of proximate cause. Here, there is a material issue of proximate cause.

Plaintiff relies in part on conflicting accounts (in the deposition) of whether the driver Hofer may have been blinded by the headlights of the wrecker and therefore not able to see the warning lights and devices on the vehicles and highway. Dennis James drove by the wrecker and truck-in-tow immediately before the Hofer-McAlpine vehicle came upon the scene and crashed into the trailer. James testified the headlights "blinded" him until he passed. Defendants attempt to undermine James' testimony by pointing out that James also admitted he saw the assortment of red and yellow lights on the wrecker and truck as well as the warning devices on the highway. James, however, testified he voluntarily telephoned the authorities the day after the accident to complain about the wrecker's having "pulled on his headlights" because it aggravated an already dangerous situation. The driver of the wrecker, on the other hand, testified his headlights were not turned on until after the accident. Given these conflicting statements, neither we nor the District Court can say as a matter of law that Hofer's conduct was the sole proximate cause of the accident. Whether he saw or should have seen the other warning lights is a question for the jury to decide.

Defendants contend the facts of this case fall within the doctrine embodied in the line of case law denying recovery to a motorist who failed to see what was in plain sight. Halsey v. Uithof (1975), 166 Mont. 319, 532 P.2d 686; Jimison, supra.; Boepple v. Mohalt (1936), 101 Mont. 417, 54 P.2d 857. They argue the fact of nighttime darkness is a "distinction without a difference." We disagree.

Assuming the wrecker headlights were on at the time of the collision, we cannot say as a matter of law how the glare might have affected Hofer's vision of the impending hazard. Hofer and McAlpine are dead. Dahl admitted at the least, that the headlights, when turned on, were upturned and blinding.

-7-

There are two views as to the effect that blinding lights have on a plaintiff's right to recover in a negligence action. The traditional view, sometimes referred to as the "range of vision" rule, was that a motorist blinded by approaching lights must either stop or proceed at such speed that he can stop to avoid collision. Failing to do so, he was charged with negligence as a matter of law and precluded from recovering as against the party negligently obstructing the road. Annot., 64 A.L.R.3d 557-558. Modernly, the impracticability of such a rule has resulted in a more flexible standard--that of reasonable care. Rather than requiring the blinded driver to stop or proceed at his peril, his duty is deemed the standard of ordinary care exercised by a reasonably prudent person, dependent upon all the circumstances and ordinarily a question for the jury. Annot., 64 A.L.R.3d at 559-562. By the modern rule, the sightless motorist is not always expected to stop or slow down.

The majority of jurisdictions now appear to have adopted the more flexible rule in a variety of forms:

> "Some courts . . . have specifically taken the position that the element of blinding headlights is not to be regarded as an intervening cause, but rather as a condition imposing upon drivers the duty to exercise that degree of due care required by all the circumstances. Others have said that a statute requiring a driver to proceed at a speed no greater than will permit him to bring his vehicle to a stop within the assured clear distance ahead has no application to a blinded driver.

> "Other jurisdictions, while recognizing the rule which requires stopping or proceeding at one's peril as generally controlling, have held that it must be applied in the light of the particular circumstances prevailing at the time, and that it is subject to a number of exceptions and qualifications, depending upon such factors as traffic conditions, such as

-8-

whether the blinded motorist was closely followed by another car, the nature and visibility of the object obstructing the road, and the suddenness of the blinding." Annot., 46 A.L.R.3d 562-565.

Courts have extended this flexible formula to cover collisions with parked or standing vehicles. Annot. 46 A.L.R.3d at 583. In the case of blinding lights from a moving or stationary light source, the contention of contributory negligence in proceeding without reduction in speed is usually considered as but one relevant factor to the jury's determination of fact. Annot., 46 A.L.R.3d at 619.

This State also has recognized the considerable influence blinding lights have on a motorist's nighttime driving and how it bears on the reasonableness of his conduct. In Ashley v. Safeway Stores, Inc. (1935), 100 Mont. 312, 47 P.2d 53, the glare of oncoming headlights so obscured plaintiff's vision that he collided with defendant's parked, unlighted truck. This Court upheld the verdict for plaintiff notwithstanding the contention, plaintiff failed to keep a proper lookout. The "proper lookout" issue was declared one of fact for the jury. In Burns v. Fisher (1957), 132 Mont. 26, 313 P.2d 1044, defendant, blinded by approaching headlights, collided with a stalled, unlighted truck in which plaintiff's defendant sat. This Court affirmed the District Court's grant of nonsuit and held the doctrine of last clear chance had no application where defendant could not see the truck for the blinding lights. We therefore reject defendants' contention that darkness and alleged blinding lights are of no consequence.

An additional fact present in this case militates against finding Hofer's conduct the sole proximate cause of the accident as a matter of law. The wrecker and truck-in-tow were traveling east in the westbound lane of traffic. Although this course may have been reasonable in the considered

-9-

judgment of defendants Coey or Dahl, Hofer's action in pulling out to pass on the right might also be considered reasonable. See Annot., 47 A.L.R.2d 6-11 (1956 & Supp. 1969, 1978). This too is a jury question.

The record before this Court indicates each of the named defendants played a part in bringing about the hazardous situation which resulted in plaintiff's loss. It is entirely possible that a jury would find their individual conduct to have so contributed to the collision as to be concurring proximate causes of it. See Kudrna v. Comet Corp. (1977), _____ Mont. _____, 572 P.2d 183, 34 St.Rep. 1386, 1395, and cases there cited.

We decide only that Hofer's conduct was not, as a matter of law, the sole proximate cause of this tragic accident.

The order granting summary judgment to each defendant is reversed and the case is remanded to the District Court for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-