No. 81-293

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

JAMES E. BROWN and HELEN BROWN,
husband and wife,

Plaintiffs and Appellants,

vs.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,
a corporation; JOHN E. BARBO, individually and
as an employee or agent; & DICK SPALDING,

Defendants and Respondents.

Appeal from:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone
Honorable Diane G. Barz, Judge presiding.

Counsel of Record:

For Appellants:

Wright, Tolliver, Guthals, Prater and Leroy, Billings,
Montana
Pierre L. Bacheller argued, Billings, Montana
Bridger Law Office, Bridger, Montana

For Respondents:

Crowley, Haughey, Hanson, Toole & Dietrich, Billings,
Montana
Robert Lee argued, Billings, Montana

Submitted:  October 27, 1981

Decided: FEB 11 1982

Filed:  FEB 11 1982

Thomas J. Kearney
_____
                              Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiffs James and Helen Brown brought an action in negligence and fraud against the brokerage firm of Merrill Lynch, Pierce, Fenner & Smith, Inc., (Merrill Lynch) and its agents seeking to recover actual and punitive damages. Summary judgment was granted to the defendants by the District Court of Yellowstone County. *Plaintiffs appeal*.

In 1979 James Brown bought and sold gold coins at a profit of approximately $44,000. Brown learned from his brother-in-law that he might defer reporting the income from the gold for a year by means of a tax straddle. As neither Brown nor his wife were familiar with tax straddles, they met with one of Merrill Lynch's agents, John Barbo, on December 10, 1979, to discuss the applicability of a commodity straddle for tax deferral purposes.

The parties agree that during the December 10 meeting Barbo discussed the risks involved with a tax straddle. However they disagree as to what was said regarding the risks. Brown contends that Barbo represented to him that the only risk involved was the risk of having to pay Merrill Lynch a commission and yet not receive the desired benefit if the market was flat and did not move. Barbo contends that he explained that risk as well as other risks associated with a straddle position. Barbo also indicated in his deposition that he may have represented to the Browns that there was not much risk involved with a tax straddle.

Brown entered into a commodity account agreement with Merrill Lynch that same day and a couple of days later obtained the necessary funds to place the straddle. The commodity account agreement contained a general acknowledgment of the high degree of risk involved in commodity futures contracts. Brown also signed a risk disclosure statement and an authorization to transfer the customer's segregated funds. Brown did not read the documents he signed nor did he request copies of the documents.

- 2 -

A short time later Brown learned that Merrill Lynch was paying higher interest on deposited funds than local banks. He closed his bank account, and on December 18 he deposited $111,399 in a joint ready asset account with Merrill Lynch. On December 19, 1979, he and his wife executed a joint account form which gave Merrill Lynch authority to act upon the orders of either Brown or his wife with regard to the joint account.

Sometime between December 24 and December 26, Brown bought 2,000 shares of Keldon Oil Company stock upon the recommendation of one of his close friends. The Keldon Oil Company shares were purchased through an order at Merrill Lynch after Brown signed the necessary papers.

During the same time period, Barbo called Brown and told him that he had an unrealized loss of approximately $18,000 on his commodity straddle. Barbo told Brown at that time that he had nothing to worry about.

On Friday, January 11, 1980, Brown was again advised that his losses were approximately $18,000. At that time Barbo expressed concern about continuing the commodity straddle and explained that Brown could bail out and take the loss or possibly "lift a leg". "Lifting a leg" means abandoning the commodity straddle position and continuing in the commodity market on a single leg of the straddle. Barbo asked Brown if he wanted to liquidate. Brown indicated that he needed some time to think about it and that he would be unable to make a decision before the following Monday.

By the following Monday, the market had moved against Brown and his losses were fluctuating between $80,000 and $125,000. Brown decided not to do anything at that time. Approximately a week later, Brown and Barbo again discussed Brown's deteriorating commodity spread position. Brown instructed Barbo at that time to lift a leg.

Both Barbo and Brown contend that Brown's order to lift a

leg was not followed immediately because Merrill Lynch's office manager told Barbo not to carry out the order until the risk of legging out was explained to Brown. The office manager stated that he could not recall whether Brown had given an order to lift a leg. After the meeting in which the risk was explained to Brown, it was no longer possible to lift a leg because of certain internal rules imposed by Merrill Lynch's corporate credit department.

After he realized that he would not be allowed to leg out of the tax straddle, Brown withdrew what money he could from the joint ready asset account he and his wife maintained with Merrill Lynch. Prior to that time certain funds had been transferred out of that account by Merrill Lynch to meet margin calls on the commodity straddle.

Shortly thereafter Merrill Lynch liquidated Brown's commodity straddle position to cover certain other margin calls that Brown had failed to meet. After liquidating Brown's position Merrill Lynch continued Brown's account with a deficiency balance for approximately three weeks, after which time a number of shares of Brown's Keldon Oil Company stock were liquidated by Merrill Lynch to cover the deficiency.

On March 7, 1980, Brown and his wife filed a complaint against Merrill Lynch, John Barbo, and the office manager, Dick Spalding. An amended complaint was filed on July 11 in response to defendants' motion for a more definite statement.

The amended complaint contained five counts: (1) a count in fraud in regard to an alleged misrepresentation of the risk involved with a tax straddle, (2) a count in negligence based on an alleged failure to disclose the true risk involved with a tax straddle, (3) a count in negligence based on an alleged failure of Merrill Lynch's agents to execute orders, (4) a count in fraud based on Merrill Lynch's alleged improper use of funds in the Browns' ready asset account to cover margin calls and (5) a count

- 4 -

based on an alleged improper liquidation of Brown's Keldon Oil Company stock. In the amended complaint the Browns prayed for actual damages of $18,000, a refund of all monies invested or lost based on the above counts, a return of the stock that was liquidated, plus $100,000 in punitive damages.

Various depositions were taken and interrogatories were filed and answered. Then on April 6, 1981, the defendants filed a motion for summary judgment which was granted on April 20. The plaintiffs appeal from the order granting summary judgment to defendants.

The following issues are raised in this appeal:

1. Whether evidence of oral statements regarding the risk involved in a tax straddle would violate the parol evidence rule.

2. Whether the District Court properly granted summary judgment on the plaintiffs' count in negligence in regard to the alleged failure of Merrill Lynch's agent to disclose the true risk involved in a tax straddle.

3. Whether the District Court properly granted summary judgment on plaintiffs' count in negligence based on an alleged failure of Merrill Lynch's agents to properly execute orders.

4. Whether the District Court properly granted summary judgment on the plaintiffs' count in fraud based on an alleged misrepresentation of the risk involved in a tax straddle.

5. Whether the District Court properly granted summary judgment on the plaintiffs' count in fraud based on an alleged improper transfer of funds by Merrill Lynch's agents from the plaintiffs' joint ready asset account, and if summary judgment was properly granted on this Court whether Helen Brown should be dismissed as a party plaintiff.

6. Whether the District Court properly granted summary judgment on the plaintiffs' count in fraud based on an alleged improper liquidation by Merrill Lynch's agents of the Keldon Oil Company stock.

7. Whether damages should be limited in the event this case proceeds to trial.

The first issue deals with the parol evidence rule. In reaching a decision regarding a summary adjudication a court is to exclude from its consideration extrinsic evidence which would violate the parol evidence rule. On a motion for summary judgment only admissible evidence can be considered. Gazette Printing Company v. Carden (1973), 163 Mont. 401, 517 P.2d 361.

The defendants contend that the District Court properly held that evidence of Barbo's oral statements regarding the risk involved with a tax straddle would be inadmissible as being inconsistent with the terms of the documents executed by Brown. The commodity account agreement signed by Brown contained a general acknowledgment of the high degree of risk involved in commodity futures contracts.

In Montana the parol evidence rule has been codified. Section 28-2-905, MCA, provides in part:

> "(1) Whenever the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms. Therefore, there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing except in the following cases:
>
> "(a) when a mistake or imperfection of the writing is put in issue by the pleadings;
>
> "(b) when the validity of the agreement is the fact in dispute.
>
> "(2) This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as described in 1-4-102, or other evidence to explain an extrinsic ambiguity or to establish illegality or fraud." (Emphasis added.)

Subsection (2) of the above quoted statute contains the statutory exceptions to the parol evidence rule. One of the exceptions is described in section 1-4-102, MCA, which provides:

> "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the

> instrument and of the parties to it, may also be
> shown so that the judge be placed in the posi-
> tion of those whose language he is to interpret."

Based on the language of section 1-4-102, MCA, this Court in

Fillbach v. Inland Const. Corp. (1978), 178 Mont. 374, 379, 584

P.2d 1274, 1277, stated:

> "Here . . . the circumstances of the parties,
> their real purpose in executing and receiving
> the instruments is subject to interpretation and
> may be proved by parol testimony."

In this case what the parties meant by the term "risk" as

it pertained to the tax straddle is likewise subject to interpre-

tation and may be proved by parol testimony.

Also, the plaintiffs allege fraudulent misrepresentation

and evidence of fraud is expressly excluded from the operation of

the parol evidence rule. Section 28-2-905(2), MCA.

Therefore we hold that the District Court erred in its

determination that evidence of the oral statements regarding the

risk involved in a tax straddle would be inadmissible. This evi-

dence should have been considered by the District Court in deter-

mining whether to grant the motion for summary judgment.

Of the remaining six issues, five deal with the District

Court's granting of summary judgment. The granting of summary

judgment is proper only when there is no genuine issue as to any

material fact and the moving party is entitled to a judgment as a

matter of law. Rule 56(c), M.R.Civ.P. It is well established in

Montana that all reasonable inferences that may be drawn from the

offered proof are to be drawn in favor of the party who opposes

summary judgment. Reaves v. Reinbold (1980), ____Mont.____, 615

P.2d 896, 37 St.Rep. 1500, and cases cited therein.

The plaintiffs first contend that the District Court erred

in granting summary judgment on their negligence claim involving

the alleged failure of Merrill Lynch's agent to disclose the true

risks involved in a tax straddle. The plaintiffs contend that

there are genuine issues of material fact which preclude the sum-

mary adjudication of this issue. They claim that certain factual

issues must be resolved before a determination can be made as to whether Merrill Lynch's agent breached his duty to Brown and also as to whether a breach of duty was the proximate cause of the injuries that Brown suffered.

The Securities Act of Montana contains a provision which implicitly establishes a code of conduct to be followed by a broker. Section 30-10-301, MCA. The broker is to refrain from making any untrue statement of a material fact or from omitting to state a material fact which would be misleading to his customer. Section 30-10-301(b), MCA. A violation of this code of conduct may constitute a breach of the duty that a broker owes to his customer. We find that here there is a genuine issue of material fact as to whether this duty was breached. The plaintiffs contend that they were misled regarding the amount of risk involved in a tax straddle and the defendants contend that Barbo fully explained to the plaintiffs the risks involved. A jury must resolve this factual dispute. In addition there is a genuine issue of material fact regarding the proximate cause of Brown's injuries. This issue also must go to the jury. We hold that the District Court improperly granted summary judgment on this count.

The plaintiffs next contend that the District Court erred in granting summary judgment on their second negligence count which was based on an alleged failure of Merrill Lynch's agents to properly execute orders. Again the plaintiffs claim that there are genuine issues of material fact which must be decided by a jury.

Under ordinary circumstances a broker has a duty to execute the order given to him within a reasonable time. Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (N.D. Alabama 1971), 337 F.Supp. 107. The plaintiffs claim that this duty was breached by Merrill Lynch's agents when they failed to immediately execute Brown's order to lift a leg and insisted upon a

meeting with Brown before carrying out the order.

The District Court gave several reasons for its determination that the factual dispute regarding this issue was not material. We find that the reasons given by the District Court are either not applicable to this case or are not supported by the facts.

Ordinarily issues of negligence are not susceptible to summary judgment and are better resolved by trial. McAlpine v. Dahl (1978), 179 Mont. 23, 585 P.2d 1307. "[N]egligence and breach of duty are for the court to decide only if the evidence is undisputed or susceptible of but one conclusion by reasonable men." Dean v. First National Bank of Great Falls (1969), 152 Mont. 474, 483, 452 P.2d 402, 407. We find that such is not the case here. Whether or not Merrill Lynch's agents executed the order within a reasonable time is for the jury to decide. We hold that the granting of summary judgment was improper on this count.

The next issue raised by the plaintiffs is whether the District Court properly granted summary judgment on their count in fraud based on an alleged misrepresentation by Merrill Lynch's agent of the risk involved in a tax straddle. The plaintiffs have based this cause of action in tort praying for punitive damages.

In order to go to the jury on this count, the plaintiffs must make out a prima facie case embracing the elements of fraud, viz: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance upon its truth; (8) the right of the hearer to rely thereon; and (9) the hearer's consequent and proximate injury or damage. Clough v.Jackson (1971), 156 Mont. 272, 479 P.2d 266.

- 9 -

The plaintiffs contend that they have made out a prima facie case and that there are genuine issues of material fact that must be decided by the jury. The defendants, on the other hand, contend that a prima facie case has not been established. They claim that with regard to the fourth element of fraud the plaintiffs failed to allege facts which would establish the necessary requirement of "scienter", i.e., an intent to defraud, reckless disregard for the truth or use of a device, scheme or artifice to defraud. They also claim that Brown had no right to rely on any representations that may have been made to him.

In this case Brown indicated in his deposition that he did not believe that Barbo deliberately misinformed him, and Barbo indicated that he believed that what he told the Browns regarding the risk was true. However, under certain circumstances there can be a finding of fraud even if the person making the false representation believed that it was true. A tort action in fraud may either be based on an intentional fraudulent and deceitful misrepresentation or it may be based on a negligent misrepresentation.

An action based on negligent misrepresentation is a rather recent development in tort law and has been described in the Restatement (Second) of Torts § 552 (1977), as follows:

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

In this case the plaintiffs have made out a prima facie case of negligent misrepresentation, and the jury must resolve the conflicting contentions of fact in regard to this cause of action.

The defendants contend, however, that the evidence presented on the motion for summary judgment established that Brown had no right to rely on any representations that may have been made to him. This contention is without merit. There is a right to rely when the parties are not on equal footing and do not have equal means of knowing the truth. Koch v. Rhodes (1920), 57 Mont. 447, 188 P. 933. The evidence before the District Court did not establish that the parties were on equal footing or that they had an equal opportunity of knowing the truth of the representations. If anything the evidence is to the contrary.

Based on the reasons given above, we hold that the District Court improperly granted summary judgment on this count.

The next two issues will be addressed together. The plaintiffs contend that the District Court erred in granting summary judgment on the count in which they allege that Merrill Lynch improperly withdrew money from the Browns' ready asset account to cover margin calls and on the count in which they allege that Merrill Lynch improperly liquidated shares of the Keldon Oil Company stock to cover a deficiency balance in James Brown's account.

We find that the granting of summary judgment was proper with regard to these counts.

The commodity account agreement which James Brown signed contained the following provisions:

> "2. Any and all securities or commodities or contracts relating thereto, now or hereafter held or carried by Merrill Lynch for you in any of your accounts (either individually or jointly with others) are to be held by Merrill Lynch as security for the payment of any liability of yours to us.

> "3. Merrill Lynch shall have the right, whenever in our discretion we consider it necessary for our protection . . . to sell any or all securities and commodities in your account(s) with us (either individually or jointly with others) . . . and to close any and all outstanding contracts . . . and it being further understood that you shall at all times be liable for the payment of any debit balance owing in your account(s) with us upon demand and that you shall be liable for

any deficiency remaining in any such account(s) in the event of the liquidation thereof in whole or in part by us or by you."

Brown also signed an authorization to transfer customer's segregated funds which stated in part:

"Until further notice in writing, you are hereby authorized and directed to transfer from my/our Regulated Commodity Account to my/our Securities Account or Unregulated Commodity Account such amount of excess funds as in your judgment may be necessary at any time to avoid calls for margin . . ."

Brown consented to having funds in the joint ready asset account transferred to cover margin calls. He also agreed that Merrill Lynch was free to sell any of the securities and commodities in his accounts if Merrill Lynch felt it was necessary for its own protection. In addition, Brown acknowledged that he was liable for any deficiencies in his accounts with Merrill Lynch.

Brown stated that he was unaware of these provisions because he did not read the documents that he signed and he contends that Merrill Lynch should be held liable for failing to bring these provisions specifically to his attention. This contention is unfounded.

This Court has stated:

"It is the general rule that a party will not be relieved, either by a court of equity or a court of law, where he executes an instrument without reading it, when he . . . negligently fails to ascertain the contents of it; the other party not being guilty of any deceit or false representation as to its contents . . ." Hjermstad v. Barkuloo (1954), 128 Mont. 88, 98, 270 P.2d 1112, 1117.

The plaintiffs also contend that Merrill Lynch is liable to Helen Brown for damages because Merrill Lynch failed to obtain her consent before withdrawing funds from the joint ready asset account. This contention is also unfounded. Both Helen and James Brown signed a joint account form which contained this language:

"With respect to our joint account with right of survivorship we confirm that: 1. In all matters

- 12 -

>pertaining to the account you may act upon orders
>and instructions from either of us."

Therefore any authorization given by James Brown to Merrill Lynch was binding on Helen Brown.

The District Court properly granted summary judgment on these two counts and as Helen Brown's only claim with regard to this case involved the withdrawal of funds from the joint ready asset account, she should be dismissed as a party plaintiff in this action.

The last issue dealing with damages is prematurely raised and will not be addressed.

The District Court order granting summary judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

Mr. Justice Daniel J. Shea concurring:

I agree with the majority opinion, but I feel compelled to comment on the order granting summary judgment. It was prepared entirely by counsel for the prevailing party and the trial court adopted it word for word.

This Court, in summary judgment actions, has expressed its concern with the trial court adopting word for word the proposed orders of prevailing counsel. See Stepanek v. Kober Construction, et al. (1981), ____ Mont. ____, 625 P.2d 51, 38 St.Rep. 385, 386.

During oral argument of this appeal counsel for defendant stated that he was doing nothing more than complying with a local rule of the District Court which requires that any party requesting relief must present along with that request a proposed order. While this rule may be laudable in most cases, it does not lend itself to be proper handling of a motion for summary judgment.

In any case involving summary judgment, if it is granted, it is not a difficult matter for the trial court to set forth in an order the facts which the losing party claims to be material, together with an explanation by the trial court of why those facts are not material. This does not constitute fact finding of a trial court in the traditional sense, and such an order would be of immense benefit to an appellate court.

On the other hand, because an order denying summary judgment is not final and normally means that the case will proceed to trial, the need for a detailed order denying summary judgment, is not as great. Nonetheless, it would be most helpful to the parties and counsel for the moving party

to know why the trial court denied summary judgment and just what facts the trial court decided were material so that a summary judgment would be improper.

I believe we are getting an inordinate number of summary judgment appeals and that adoption of my recommendations would cause the trial courts to be more careful in determining whether summary judgment is the proper remedy. A summary judgment properly granted is an efficient and useful device. But a summary judgment improperly granted has just the opposite effect.

Daniel J Shea
Justice