No. 90-620

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

FILED

JUN 18 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

CANAL INSURANCE COMPANY,

     Plaintiff and Appellant,

-vs-

GARY BUNDAY, d/b/a BUNDAY TRUCKING; and UNITED STATE FIDELITY AND GUARANTY COMPANY,

     Defendants and Respondents.

---

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Gig A. Tollefsen; Berg, Lilly, Stokes, Andriolo, Tollefsen & Schraudner, Bozeman, Montana.

    For Respondent:

        Sarah M. Power; Gough, Shanahan, Johnson & Waterman, Helena, Montana.

---

Submitted on briefs:  May 10, 1991

Decided:  June 18, 1991

Filed:

---

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This case involves a dispute between two insurers concerning who should pay the liabilities incurred by the insured, Gary Bunday d/b/a Bunday Trucking (Bunday), arising from a negligence case. The plaintiff, Canal Insurance Company (Canal), appeals the order of the Eighteenth Judicial District Court, Gallatin County, denying its motion for summary judgment and granting the defendant United States Fidelity and Guaranty Company's (USF&G) motion for summary judgment. We reverse.

The parties raise several issues on appeal and cross-appeal. However, the first issue raised by Canal on its appeal is dispositive of this case: Did the District Court err in granting summary judgment to USF&G based upon finding coverage for the insured in the policy issued by Canal?

On August 2, 1983, Terrence North was killed when he drove off the end of a dead-end frontage road east of Bozeman and drove his vehicle into two semi-trailers owned by Bunday Trucking. The trailers were parked on property adjacent to Bunday's premises. The decedent's estate sued the State of Montana for failing to properly mark the end of the frontage road and Bunday for negligently placing the semi-trailers in a position where they could be struck by someone driving off the end of the frontage road. Bunday tendered the defense of the case to his insurers, Canal and USF&G.

At that time, USF&G took the position that Canal had the obligation to defend Bunday, and that USF&G had no liability.

2

Canal refused to defend Bunday, and brought the present action seeking a declaratory judgment that it had no liability on the North claim. To protect itself, USF&G undertook defending Bunday on the North claim. Following trial on the liability issue and appeal to this Court, the underlying case was settled. Bunday's share of the settlement was $125,000.00. USF&G paid $108,500.00 and Canal contributed the remaining $16,500.00.

After the settlement, USF&G amended its answer in this declaratory judgment action and counterclaimed against Canal seeking reimbursement of the $108,500.00 it had paid on the North settlement, and the costs and fees incurred in defending Bunday. On February 26, 1990, Canal moved for summary judgment asserting that the USF&G policy provided coverage and their policy did not. On February 27, 1990, USF&G moved for summary judgment arguing that the Canal policy was ambiguous and that such ambiguities should be resolved in favor of coverage for the insured. USF&G further asserted that the reason it provided coverage was due to an underwriting coding error on the declaration page of its own policy.

On May 3, 1990 the District Court granted USF&G's motion for summary judgment and ordered Canal to reimburse USF&G for the $108,000.00 paid on the North claim. It further ordered that since USF&G had no duty to defend the claim, it should recover costs and attorney fees from Canal incurred in the defense. Additionally, the court held that USF&G was entitled to interest to be paid by Canal on the principal sums paid by USF&G on the claim. Canal

3

appealed. We dismissed that appeal as premature because the District Court had not yet determined the amount of attorney's fees and interest to be awarded.

On June 23, 1990, the matter of the attorney's fees award and interest was considered by the District Court. On August 17, 1990, the court denied USF&G's motion for costs and attorney's fees and pre-judgment interest on the grounds that there had been a legitimate legal issue regarding which insurer should pay Bunday's liability. Canal now appeals, asserting that the finding of coverage under its policy was error and, alternatively, if this Court finds that Canal's policy does provide coverage, that the District Court's failure to split the settlement equally between the insurers, in accordance with policy provisions, was error.

We now examine the specific paragraphs of Canal's policy that give rise to the issues in this case. Canal's policy provides that

> The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of
> **bodily injury** or **property damage**
> to which this insurance applies, caused by an **occurrence** and arising out of the ownership, maintenance or use, including loading and unloading, <u>for the purposes stated as applicable thereto in the declarations</u>, of an **owned automobile** . . . . (Underscored emphasis added.)

The bold-face terms in the policy are further defined in the policy. The policy defines an "owned automobile" as

> either
> (a) <u>an **automobile** which is owned by the **named insured** and described in the declarations</u>;
>     or
> (b) an **automobile** ownership of which is newly acquired by the **named insured** during the policy period . . . .

The policy defines "automobile" as

4

a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto) . . . .

The coverage paragraph of the policy quoted above essentially provides coverage for accidents involving automobiles owned by the insured which are described in the declarations, or automobiles purchased to replace ones described in the declarations or added to the insured's fleet of automobiles if notice is given and an increased premium paid. The declarations portion of the policy refers to a separate Schedule of Equipment, form E-69L. The Schedule of Equipment states that it is "[a]ttached to, forming a part of and completing the Declarations" of the policy. It lists the following equipment:

```
 1.  1973 Freightliner    Tractor S#CA213HP086005
 2.  1977 Kenworth        Tractor S#156877
 3.  1977 Kenworth        Tractor S#255T30M
 4.  1978 Kenworth        Tractor S#165147S
 5.  1978 Freightliner    Tractor S#CA213HL137604
 6.  1979 Freightliner    Tractor S#CA213HP164470
 7.  1981 Freightliner    Tractor S#1FV8YOY97B
 8.  1979 Freightliner    Tractor S#CA213HP164471
 9.  1968 Freightliner    Tractor S#CA213HP0328027
10.  1976 Peterbuilt      Tractor S#83864P
11.  1979 International    Tractor S#E252HGA21711
12.  1970 International    Tractor S#259471VG403083
13.  ANY UNDESCRIBED TRAILER WHILE ATTACHED TO UNIT  1
14.  ANY UNDESCRIBED TRAILER WHILE ATTACHED TO UNIT  2
15.  ANY UNDESCRIBED TRAILER WHILE ATTACHED TO UNIT  3
16.  ANY UNDESCRIBED TRAILER WHILE ATTACHED TO UNIT  4
17.  ANY UNDESCRIBED TRAILER WHILE ATTACHED TO UNIT  5
18.  ANY UNDESCRIBED TRAILER WHILE ATTACHED TO UNIT  6
19.  ANY UNDESCRIBED TRAILER WHILE ATTACHED TO UNIT  7
20.  ANY UNDESCRIBED TRAILER WHILE ATTACHED TO UNIT  8
21.  ANY UNDESCRIBED TRAILER WHILE ATTACHED TO UNIT  9
22.  ANY UNDESCRIBED TRAILER WHILE ATTACHED TO UNIT 10
23.  ANY UNDESCRIBED TRAILER WHILE ATTACHED TO UNIT 11
24.  ANY UNDESCRIBED TRAILER WHILE ATTACHED TO UNIT 12
```

Canal alleges that the two trailers in this case were merely being used for storage; USF&G alleges they were parked but generally used to haul beer. Regardless of these allegations, it is undisputed that the trailers in this case were parked and not attached to any tractor when the decedent collided with them.

The District Court found, and USF&G argues on appeal, that the policy is ambiguous. After concluding that the policy was ambiguous, the court then followed the established rule of resolving ambiguities against the insurer. See § 28-3-206, MCA; Bauer v. Mountain West Farm Bureau Mutual Ins. Co. (1985), 215 Mont. 153, 156, 695 P.2d 1307, 1309; St. Paul Fire & Marine Ins. Co. v. Cumiskey (1983), 204 Mont. 350, 363, 665 P.2d 223, 229; Williams v. Ins. Co. of North America (1967), 150 Mont. 292, 295, 434 P.2d 395, 397. Ambiguity exists only when the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations. Williams, 434 P.2d at 397. A clause in an insurance policy is ambiguous when different persons looking at it in the light of its purpose cannot agree upon its meaning. Bauer, 695 P.2d at 1309. The ambiguity argued by USF&G and found by the court is that the policy definition of "automobile" as used in the term "owned automobile" includes semi-trailers and does not require attachment to a tractor.

We disagree. If the language of a contract is unambiguous and subject to only one meaning, there is no basis for the interpretation of the policy coverage under the guise of ambiguity. Bauer, 695 P.2d at 1309; Williams, 434 P.2d at 397. As Canal

points out, there is no ambiguity here at all. Under the policy, coverage is only extended to "owned automobiles." The definition has three criteria. An "owned automobile" is defined as (1) an automobile (2) owned by the insured, and (3) described in the declarations. Thus, a semi-trailer--while clearly an [1] "automobile" under the policy--is not an "owned automobile" unless it is also [2] owned by the insured and [3] described in the declarations--i.e, it must be attached to a tractor. This is the only reasonable construction that can be arrived at from the wording here. USF&G's "ambiguous" construction gives little or no effect to the declarations of the policy and the attached schedule. Section 28-3-202, MCA, requires that effect be given to every part of a contract if reasonably practicable, with each clause helping to interpret the others. To follow USF&G's logic one could also conclude that an ambiguity exists because the term "automobile" as used in "owned automobile" includes semi-trailers and does not require ownership by the insured; thus all automobile liability policies that limit coverage to only automobiles "owned by the named insured" would be ambiguous. Such logic would have serious consequences on the construction of all automobile liability policies. We hold that there is no conflict between the coverage paragraph and the declarations in this policy.

Our holding is supported by the case of Harbor Ins. Co. v. United Services Auto Assn. (1976), 114 Ariz. 58, 559 P.2d 178. In Harbor, Millhouse had rented a tractor from Erv's Equipment Rental. While operating the tractor on a public road, he was involved in

7

a collision with Aruffe, who was injured and filed an action for damages alleging that Millhouse was negligent. Millhouse was insured by Farmer's Insurance Company of Arizona and Erv's was insured by Harbor. A dispute arose regarding which insurer was primarily liable. Like the case at bar, Harbor's policy included a definition of "owned automobile" and an attached schedule specifically listing the vehicles insured. The tractor involved in the accident was not listed. The trial court found Harbor primarily liable under its policy. The court of appeals reversed, holding that the tractor was not an "owned automobile" within the coverage of Harbor's policy. The court stated that while ambiguities are to be construed against the insurer, "when a policy's meaning and intent are clear, it is not the prerogative of the courts to create ambiguities where none exist or to rewrite the contract in attempting to avoid harsh results." Harbor, 559 P.2d at 181. The court further noted that "[t]he scheduling of automobiles is not merely for the convenience of assessing premiums but is itself a declaration of the limitations of the hazards assumed." Harbor, 559 P.2d at 178.

USF&G argues that Harbor is distinguishable because there the parties conceded the tractor in question was not listed on the vehicle schedule; in the present case the trailers are listed. We see no distinction. Here the only trailers listed on the schedule were "undescribed" trailers while attached to a tractor unit specifically described and scheduled. Parked, unattached trailers are not listed.

8

USF&G argues that in addition to interpreting contract language, policy intent must be considered. It argues that this Court has imposed a high standard on insurance companies:

> Although courts have long followed the basic precept that they would look to the words of the contract to find the meaning which the parties expected from them, they have also applied the doctrine of the adhesion contract to insurance policies, holding that in view of the disparate bargaining status of the parties <u>we must ascertain that meaning of the contract the insured would reasonably expect</u>. . . . [T]he test is not what the insurer intended the words of the policy to mean but what a reasonable person in the position of the insured would understand them to mean. (Emphasis in original.)

McAlear v. St. Paul Ins. Cos. (1972), 158 Mont. 452, 458-9, 493 P.2d 331, 335. Our holding here does not call McAlear into doubt. Rather, we hold that a reading of the policy here as a whole, including the declarations and attached schedules, gives rise to only one reasonable interpretation: that there is no coverage for trailers not attached to insured tractors. The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity. Section 28-3-401, MCA. The language here is clear and explicit; the result may be harsh but it is not absurd. The intent of the parties is controlled by the language of the contract in this case.

USF&G also argues that Canal's filing of an Interstate Commerce Commission endorsement form BMC-90 is evidence of Canal's intention to provide coverage for both tractors and trailers, whether or not they are attached. This Court has held that such endorsements do not impose primary liability as a matter of law on the insurer of the licensed carrier under whose permit a vehicle

9

is in use at the time of an accident. Truck Ins. Exchange v. Transport Indemnity Co. (1979), 180 Mont. 419, 430, 591 P.2d 188, 194. Furthermore, as noted above, the intent of the parties is controlled by the clear, explicit and unambiguous language of the contract in this case.

Finally, USF&G urges this Court to consider the difference in the respective premiums paid by Bunday to Canal ($30,180.00) and USF&G ($1,890.00) to insure the different aspects of Bunday's business as evidence that the parties intended for this type of accident to be covered by Canal's policy rather than USF&G's. The District Court noted that

> The pertinent part of the applicable USF&G policy is Part II, "Business Autos." Part II, Letter C, states that trailers with a load capacity of two thousand (2,000) pounds or less, designed to travel on public roads, are covered autos. This language would exclude a semi-trailer . . . as was involved in the North case. Unfortunately for USF&G, it made an underwriting error on the declaration page of its policy, thereby extending coverage to "any auto" rather than business automobiles specifically described on the attachment to the policy.
> A fair reading of the two policies clearly reflects that USF&G was not insuring Bunday's over-the-road hauling operation, but that Canal was.

The size of the premium may be a factor considered "in construing doubtful clauses in a policy." 2 Couch on Insurance 2d, § 15.52 (1984); see also Pan American World Airways v. Aetna Casualty & Surety (2d Cir. 1974), 505 F.2d 989, 1001, at n. 10. Here, the clause is not "doubtful," ambiguous, or uncertain, and we need not look beyond the language of the contract. Furthermore, USF&G is arguing that it should not be held liable due to a technical mistake in underwriting when the contracts taken together indicate that Canal was insuring the liability at issue here. We note that if USF&G had not made that mistake, its policy definitions would

10

be organized in a manner similar to Canal's policy, and it would not be liable. Canal should not be faulted for USF&G's mistake in underwriting.

This Court has the power to reverse the district court's grant of summary judgment and order it to enter summary judgment in favor of the other party as a matter of law only when it is clear that all the facts bearing on the issues are before this Court. Hereford v. Hereford (1979), 183 Mont. 104, 110, 598 P.2d 600, 603; citing Swecker v. Dorn (1979), 181 Mont. 436, 441, 593 P.2d 1055, 1058-9; 6 Moore's Federal Practice ¶ 56.12, p. 56-337. There are no genuine issues of material fact in this case. We conclude that the trailers were not "owned automobiles" within the coverage of Canal's policy and direct that judgment be entered in favor of Canal. The order of the District Court is

**REVERSED.** Summary Judgment is ordered in favor of Canal.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

11