No. 98-616

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 230

296 Mont. 115

987 2P.d 1151

SCOTT AND CAROLYN MILLER,

Petitioners and Appellants,

v.

TITLE INSURANCE COMPANY OF

MINNESOTA,

Defendant and Respondent.


APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Thomas. C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

John R. Alke, Michael F. McMahon, Hughes, Kellner, Sullivan & Alke;

Helena, Montana

For Respondent:

Gary L. Davis, Luxan& Murfitt, PLLP; Helena, Montana

---

Submitted on Briefs: February 25, 1999

Decided: September 28, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

- ¶Scott and Carolyn Miller commenced this action against Title Insurance Company of Minnesota on October 28, 1997, in the First Judicial District Court, Lewis and Clark County, for breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the Montana Unfair Trade Practices Act. On May 1, 1998, Title Insurance Company moved for summary judgment, and thereafter, the Millers moved for partial summary judgment with respect to their breach of contract claim. On September 9, 1988, the District Court granted Title Insurance Company's motion for summary judgment and denied the Millers' motion for partial summary judgment. On September 16, 1998, the District Court entered judgment in favor of Title Insurance Company. The Millers appeal from that judgment. We affirm.

- ¶The issue presented on appeal is whether the District Court erred when it granted Title Insurance Company of Minnesota's motion for summary judgment and denied the Millers' motion for partial summary judgment.

## FACTUAL BACKGROUND

- ¶In November 1988, Scott and Carolyn Miller purchased a home in Helena, Montana. At the time they purchased the home, they purchased a title insurance policy from Minnesota Title, now known as Title Insurance Company, through its agent Helena Abstract & Title Company. This policy defined the term "public records" as: "those records which by law impart constructive notice of matters relating to said land."

- ¶Prior to the issuance of the insurance policy, the Millers received two title commitments from Title Insurance Company, which did not specifically define the term "public records." However, under the Conditions and Stipulations section, the commitment states:

3. Liability of the Company under this Commitment shall be only to the named proposed Insured and such parties included under the definition of Insured in the form of policy or policies committed . . . and such liability is subject to the insuring provisions and the Conditions and Stipulations and the Exclusions from Coverage of the form of policy . . . which are hereby incorporated by reference and made a part of this Commitment except expressly modified herein.

  - ¶In August 1996 the Millers began excavation to construct a garage on their property. During that excavation and construction, the Millers learned that a neighbor's water and sewer lines ran across their property. Specifically, the lines ran beneath the location of the new garage. At the time the water and sewer lines were installed, both the dominant and servient estates were under common ownership.
  - ¶The Millers determined that the easement established for the neighbor's water and sewer lines, as identified by records located in the city engineer's office, rendered their title unmarketable. Consequently, they submitted a claim to Title Insurance Company. The Millers requested that Title Insurance Company cure the title defect by securing the relocation of their neighbor's water and sewer lines, and by reimbursing them for legal expenses they had and would incur in curing the title defect. Title Insurance Company denied the claim based on a coverage exclusion in the policy, which limited coverage to easements of public record. Nothing in the Millers' chain of title, recorded in the Lewis and Clark County Clerk and Recorder's office, revealed the existence of the water and sewer lines. However, the lines were shown in the records of the Helena City Engineer and Water Department.

## STANDARD OF REVIEW

- ¶Our standard of review in appeals from summary judgment rulings is *de novo*. *Motaire v. Northern Mont. Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156 (citing *Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 470, 872 P.2d 782, 785). When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R. Civ.P. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In *Bruner*, we set forth our inquiry:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Bruner, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).*

## DISCUSSION

- ¶Did the District Court err when it granted Title Insurance Company of Minnesota's motion for summary judgment and denied the Millers' motion for partial summary judgment?
- ¶The District Court concluded that since the insurance policy unambiguously defined the term "public records," it could not offer an alternative interpretation. The District Court pointed out that the insurance policy unambiguously limited coverage to

encumbrances of which Title Insurance Company had constructive notice and that the Millers could not point to any statute declaring that records in a city engineer's office provide constructive notice. As a result, the District Court concluded that the reasonable expectations doctrine did not apply and entered summary judgment in favor of Title Insurance Company.

- ¶Millers contend that the term "public records" as defined in the insurance policy is ambiguous, uncertain, and unclear and the limiting effect of that definition violates their reasonable expectations. Title Insurance Company responded by stating that the records located in the city engineer's office are not public records as defined by the policy, and therefore, the existence of the underground lines was not an insured matter.

- ¶Millers assumed a broad definition of "public records." They argue that pursuant to § 2-6-101, MCA, the "public writings" statute, it was reasonable for them to expect prior to receiving the policy and after reading the title commitment, that the term "public records" included all public records relative to their property and specifically, in this case, those records relating to sewer and water lines encumbering their property as maintained by the City of Helena Engineer's Office and Water Department.

- ¶The purpose of Title 2, Chapter 6, Part 2 of the Montana Code Annotated is as follows:

[T]o create an effective records management program for executive branch agencies of the state of Montana and political subdivisions by establishing guidelines and procedures for the efficient and economical control of the creation, utilization, maintenance, and preservation of state and local records.

Section 2-6-201, MCA. Section 2-6-202(1), MCA, defines "public records" as:

"Public records" includes any paper, correspondence, form, book, photograph, microfilm, magnetic tape, computer storage media, map, drawing, or other document, including all copies thereof, regardless of physical form or characteristics, that has been made or received by a state agency in connection with the transaction of official business and preserved for informational value or as evidence of a transaction and all other records or documents required by law to be filed with or kept by any agency of the state of Montana.

Local government public records are similarly defined except that the definition is limited to those records made, received, or kept by a local government. *See* § 2-6-401(2), MCA. However, the title insurance policy at issue in this case specifically defines "public records" as "those records which *by law* impart *constructive notice* of matters relating to said land." (Emphasis added.)

- ¶Pursuant to the Montana recording statutes, "constructive notice," as found in the definition of "public records," is described as:

  (1) Every conveyance of real property acknowledged or proved and certified and recorded as prescribed by law, *from the time it is filed with the county clerk for record, is constructive notice* of the contents thereof to subsequent purchasers and mortgagees.

(2) A certified copy of any such recorded conveyance may be recorded in any other county, and when so recorded the record thereof shall have the same force and effect as though it was of the original conveyance.

Section 70-21-302, MCA, (emphasis added). Section 70-21-209, MCA, defines what instruments are to be considered recorded:

An instrument is deemed to be recorded when, being duly acknowledged or proved and certified, *it is deposited in the county clerk's office* with the proper officer for record.

(Emphasis added.)

- ¶The Millers contend that they relied on the ambiguous term "public records" in the title commitment, which was not defined, when they purchased their home. They assert that they interpreted "public records" to mean "those records which relate to their property and that are open to the public to review and inspect." The Millers explain that, upon reviewing the title commitment, they expected and understood that any adverse interest, easement, claim, encumbrance, or lien that was not shown by the public records, would not be insurable based upon the exceptions stated in the title commitment. The

Millers maintain that the phrase "by law" within the definition of "public records" in the policy does not adequately inform an insured that an examination of the Montana recording statutes codified at §§ 70-21-101, et seq., MCA, is required in order to determine what is meant by the term "public records."

- ¶We have held that the interpretation of an insurance policy is a question of law. *See Leibrand v. National Farmers Union Property & Cas. Co.* (1995), 272 Mont. 1, 6, 898 P.2d 1220, 1223 (citation omitted). "Ambiguity exists only when the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations." *Canal Ins. Co. v. Bunday* (1991), 249 Mont. 100, 105, 813 P.2d 974, 977 (citation omitted). A clause in an insurance policy is ambiguous "when different persons looking at the clause *in light of its purpose* cannot agree upon its meaning." *Leibrand*, 272 Mont. at 6, 898 P.2d at 1223 (citations omitted).

- ¶Under Montana law, "[t]he language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." Section 28-3-401, MCA. In *Canal*, we determined that "[i]f the language of a contract is unambiguous and subject to only one meaning, there is no basis for the interpretation of the policy coverage under the guise of ambiguity." *Canal*, 249 Mont. at 105, 813 P.2d at 977.

- ¶In this case, the term "public records"

defined in the title policy is not reasonably subject to two different interpretations. The title policy issued to the Millers specifically defines "public records" as "those records which by law impart constructive notice of matters relating to said land." This is entirely consistent with existing Montana statutory law and Montana recording procedures, which require that documents affecting title to real property be recorded with the county clerk and recorder of the county in which the real property is located. *See* §§ 70-21-201, et seq., MCA. By law, upon filing and recordation with the proper officer in the county clerk's office, subsequent purchasers and mortgagees are deemed to have *constructive notice* of a conveyance of real property and its contents. *See* § 70-21-302(1), MCA. In addition, judgments docketed in the clerk of the district court's office become liens on the real estate owned by the judgment debtor. *See* § 25-9-302, MCA. These are the records that impart constructive notice of matters relating to real property and, for the purposes of this case, are the "public records" defined in the title policy.

- ¶The applicable Montana statutes, therefore, do not impose a duty upon title insurers to search city engineer or water department records. Pursuant to Montana law and the title policy at issue, a title insurer is only under a contractual duty to investigate the documents properly

recorded or docketed and which themselves, or through their contents, impart constructive notice of liens and encumbrances, including easements.

- ¶According to Title Insurance Company, the contract definition of "public records," in conjunction with the Montana statutes relating to recorded instruments (§ 70-21-209, MCA) and constructive notice (§ 70-21-302, MCA), make it clear that title insurers and abstractors search only record title in the offices of the clerk and recorder and the clerk of court in the county in which the real property is located. Pursuant to Montana's statutory scheme, documents recorded or filed in the office of the clerk and recorder or clerk of court impart constructive notice. Nowhere in the insurance policy or Montana statutes related to recording is there a suggestion that the records of the city engineer and water department impart constructive notice to purchasers of real property. While documents located in a city engineer's office or water department may be subject to public inspection as public records under § 2-6-202(1), MCA, such documents do not by law impart constructive notice. Accordingly, we agree with Title Insurance Company and conclude that the term "public records" in the Millers' policy is not ambiguous.

- ¶ Alternatively, the Millers contend that even if no ambiguity is found in the contractual definition of "public record," it is within their reasonable expectations

that such encumbrances on their real property, regardless of where they were recorded, would be covered by their title insurance. Title Insurance Company contends that the Millers' expectation is not reasonable because no title underwriter could maintain copies of such a broad assortment of records, nor could any local title company research those records every time a request for title insurance was presented.

- ¶"The reasonable expectations doctrine provides that the objectively reasonable expectations of insurance purchasers regarding the terms of their policies should be honored notwithstanding the fact that a painstaking study of the policy would have negated those expectations." *American Family Mut. Ins. Co. v. Livengood*, 1998 MT 329, ¶ 32, 292 Mont. 244, ¶ 32, 970 P.2d 1054, ¶ 32. Nevertheless, we have determined that "the reasonable expectations doctrine is inapplicable where the terms of the policy at issue clearly demonstrate an intent to exclude coverage." *American Family*, ¶ 33. The reason for this determination is that an insured's "expectations which are contrary to a clear exclusion from coverage are not 'objectively reasonable'." *American Family*, ¶ 33.

- ¶The policy at issue in this case clearly states that it does not insure against loss or damage by reason of "easements, or claims of easements, not shown by the public records." As indicated previously,

the policy defines the term "public records" as "those records which by law impart constructive notice of matters relating to said land." This language clearly demonstrates an intent to exclude coverage for easements, or claims of easements, not shown by the public records. As such, the District Court correctly determined that the reasonable expectations doctrine does not apply. Thus, the Millers' expectations which were contrary to the clear exclusion of coverage were not objectively reasonable.

- ¶Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER