DA 12-0614

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 257

TOM HARPOLE,

      Plaintiff and Appellant,

   v.

POWELL COUNTY TITLE COMPANY, and
FIRST AMERICAN TITLE INSURANCE COMPANY,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Powell, Cause No. DV-10-77
Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Quentin M. Rhoades; Sullivan, Tabaracci & Rhoades, P.C.;
Missoula, Montana

          Nathan G. Wagner; Datsopoulos, MacDonald & Lind, P.C.;
Missoula, Montana

      For Appellee First American Title Insurance Company:

          Ian McIntosh, Kelsey E. Bunkers, Brad Brown; Crowley Fleck, PLLP;
Bozeman, Montana

      For Appellee Powell County Title Company:

          Ted L. Mizner; Attorney at Law; Deer Lodge, Montana

Submitted on Briefs:  July 31, 2013

Decided:  September 10, 2013

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Tom Harpole, a former owner of real property in Powell County, sued First American Title Insurance Company and Powell County Title Company claiming they negligently misrepresented the status of the access road into his former property and thus foiled a potential sale of the property. The Third Judicial District Court granted summary judgment in favor of the title companies. Harpole appeals. We affirm.

## ISSUES

¶2 A restatement of the issues on appeal is:

¶3 Did the District Court err in granting summary judgment in favor of the title companies?

¶4 In a companion case, did the District Court abuse its discretion when it required Harpole to post an appellate bond?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Tom Harpole moved onto a parcel of real property located near Avon, Montana, in Powell County in 1977. At that time, the property was owned by his grandfather's corporation and had been since 1931. In 1991, Harpole purchased the property from the family corporation. At the time of purchase, he obtained title insurance from First American Title Insurance Company (First American) through Powell County Title Company (Powell County Title). The 1991 title policy did not contain any exception for legal access. Harpole testified that since he moved onto the property, he had

continuously accessed it without complication by way of what is now known as Harpole Road.

¶6  In 2006, Harpole began marketing the property for sale. He claims a prospective buyer made an offer to purchase the property for $800,000 in 2008. In preparation for this sale, Harpole obtained a preliminary title commitment from Powell County Title. At the time Grace Foster was responsible for all title insurance work performed by Powell County Title and wrote insurance policies for First American. Prior to issuing the preliminary title commitment, Foster searched "the records located in the Powell County Treasurer's Office, Clerk and Recorder's Office, the Clerk of Court's office and the Commissioner's Office." Discovering that these records contained no indication that Harpole Road was a county road, Foster consulted with the Powell County Assessor who opined that Harpole Road was not an official county road. As a result, the 2008 preliminary title commitment contained an exception for "lack of right of access to and from the subject property."

¶7  Harpole visited Foster's office to discuss the title commitment. Foster explained to Harpole that Harpole Road had not been designated as a county road and there was no recorded easement establishing a road. Harpole then met with numerous county officials all of whom opined that Harpole Road was not a designated county road on the road map or in the county road book. He claims he was invited by county officials to conduct his own research and thus began an investigation that lasted three months and took him to Helena, Butte, Missoula and Billings. In his investigation, Harpole discovered several

4

old maps and various historic documents including a 1903 road record document (1903 Road Record) which was located in a vault in the Clerk and Recorder's office at the Powell County Courthouse.

¶8 The 1903 Road Record, which contains a description of multiple road districts existing in Powell County in 1903, including the Avon area, stated "County Road No. 9" was declared a public highway in 1903. Based upon the description of County Road No. 9, Harpole concluded that Harpole Road was formerly known as County Road No. 9 and had been a "public highway" since either 1903 or as a result of a 1907 resolution.

¶9 After discussing his research results and this document with the County Attorney, a Powell County Commissioner, and the Powell County Road Supervisor, the County Attorney issued a written opinion that Harpole Road was in fact a lawfully dedicated county road. Subsequently, Foster issued an amended preliminary title commitment which deleted the exception pertaining to lack of legal access.

¶10 Harpole claims that the prospective buyers withdrew their offer of purchase when First American and Powell County Title initially refused to insure legal access to the property. Though an amended commitment was later issued, Harpole maintains that the prospective buyers had by then purchased other property and were no longer in the market. Harpole subsequently sold the property in 2009 for $475,000.

¶11 Harpole filed a Complaint and Demand for Jury Trial on September 15, 2010, claiming both title companies had failed to conduct "a reasonable search and examination of the title" as required by § 33-25-214(1), MCA (2009), and, consequently, were

5

negligent per se. He also asserted the companies had negligently misrepresented the status of Harpole Road in the preliminary title commitment prepared for Harpole. He urged the District Court to apply the "reasonable care" standard set forth in Restatement (Second) of Torts, § 552, when analyzing his negligent misrepresentation claim. Lastly, he claimed to have suffered the loss of a sale and severe emotional distress as a result of the title companies' negligence.

¶12 On September 16, 2011, in response to the title companies' motions for partial summary judgment, the District Court dismissed Harpole's claim of negligence per se. Harpole does not appeal this ruling and we will address it no further. The court also determined that Harpole's claim of negligent misrepresentation could not apply to statements in the preliminary title commitment because under § 33-25-111(2), MCA (2009), a preliminary title commitment "does not constitute a representation as to the condition of title to real property."

¶13 In April 2012, Harpole filed an amended complaint. He re-asserted his claims of negligence per se and negligent misrepresentation based upon statements contained in the preliminary title commitment, despite the court's prior dismissal of these claims. He also restated his negligent misrepresentation claim based upon Foster's verbal statements to him. He re-designated his emotional distress claim as a common law negligence claim. Lastly, he added a "vicarious liability-agency" claim against the title companies.

¶14 On May 17, 2012, First American and Powell County Title filed a joint motion for summary judgment on Harpole's remaining claims. On August 16, 2012, the District

Court granted summary judgment in favor of the title companies and dismissed the case. Harpole does not appeal the entry of summary judgment on his vicarious liability claim. As to Harpole's remaining negligence and negligent misrepresentation claims, the court expressly ruled that Foster's decision to issue a legal access title commitment exception was reasonable given the uncertainty surrounding the legal status of Harpole Road, and that Foster did not orally provide false information to Harpole. Consequently, the District Court dismissed Harpole's negligence-based claims. Harpole appeals these rulings.

**STANDARD OF REVIEW**

¶15 We review de novo a district court's grant of summary judgment, applying the same M. R. Civ. P. 56 criteria as the district court. The moving party must establish the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. We review a district court's conclusions of law for correctness. *Hartsoe v. Christopher*, 2013 MT 57, ¶ 8, 369 Mont. 223, 296 P.3d 1186 (internal citations omitted).

**DISCUSSION**

¶16 *Did the District Court err in granting summary judgment in favor of the title companies?*

¶17 On appeal, Harpole argues the District Court erred in granting summary judgment in favor of the title companies. He maintains that genuine issues of material fact existed and therefore a jury should have decided both his common law negligence and his negligent misrepresentation claims. Respectively, these claims are based upon Foster's

7

failure to locate and review the 1903 Road Record, and Foster's oral conversations with Harpole pertaining to the legal status of Harpole Road.

*Common Law Negligence*

¶18 Harpole relies on *Malinak v. Safeco Title Ins. Co*, 203 Mont. 69, 76, 661 P.2d 12, 16 (1983), which states that a title insurer has a duty to "base its title commitment and report upon a reasonably diligent title search of the public records." Harpole maintains that he has sufficiently alleged a breach of this duty, and that whether the title companies breached this duty is a question of fact to be resolved by a jury. Harpole argues that the District Court "ignored" expert testimony proffered by the title companies' expert that Harpole Road is the only road that meets the 1903 description of County Road No. 9. He claims the court also wrongly dismissed his expert's testimony because Harpole's counsel had described the 1903 Road Record to the expert witness in a manner the District Court concluded was "unsupported by the record." Harpole claims these errors constitute prejudicial and reversible error.

¶19 Harpole notes that in its order granting summary judgment, the District Court acknowledged "[r]easonable minds cannot differ that, even if Ms. Foster's search of records had included a review of [the 1903 Road Record], her decision to issue a preliminary title commitment excepting legal access was reasonable given the uncertainty surrounding the legal status of Harpole Road." Harpole asserts that because there is no question that Harpole Road was in fact a dedicated county road, the question is whether

Foster's document search was reasonable and diligent and whether her unequivocal conclusion as to the status of Harpole Road was reasonable under the circumstances.

¶20 Harpole also maintains that the affidavit submitted by the prospective buyer who stated he did not go forward with the purchase because of the preliminary title commitment's exception satisfies "the prima facie showing required to defeat a motion for summary judgment" as to causation. Lastly, he claims in his affidavit that he suffered damages, including but not limited to the difference in sale price from $800,000 to $475,000, as a result of Foster's error.

¶21 The title companies respond that because Foster's document search was reasonable and satisfied the applicable standard they breached no duty to Harpole. They assert the title company's duty was "to examine the *public records* before issuing the title commitment and it is undisputed that it did so." (Emphasis added.) They argue that the 1903 Road Record is not a public record because it was never "recorded" or "filed" of record. They further argue that the 1903 Road Record did not in any event conclusively establish the status of Harpole Road, as it contained no survey or legal description, and contained only vague references to landmarks that have long since disappeared. The title companies point out that it was only after assimilating multiple documents that the County Attorney ventured to conclude that Harpole Road was in fact a county road. Thus, the title companies maintain that Foster's failure to uncover the document and her decision to issue a title commitment excepting legal access based upon the contents of public records and the information derived from county officials, was reasonable.

9

¶22 As noted by all parties, *Malinak* provides:

> We find a duty on the part of the title insurer when it issues a title commitment which later forms the basis for a title insurance policy, particularly where the seller relies on the title commitment, to base its title commitment and report upon a reasonably diligent title search of the public records.

*Malinak*, 203 Mont. at 76, 661 P.2d at 16. *See also Miller v. Title Ins. Co.*, 1999 MT 230, ¶¶ 17-19, 296 Mont. 155, 987 P.2d 1151.

¶23 In *Miller*, the Millers purchased a home in Helena, Montana, and purchased title insurance from Title Insurance Company of Minnesota (TIC). *Miller*, ¶ 3. It was later discovered that the Millers' neighbor's water and sewer lines ran across the Millers' property and prohibited the Millers from constructing a garage. They submitted a claim to TIC requesting that TIC cure the title defect, secure the relocation of the neighbor's water and sewer lines, and reimburse them for any costs incurred. TIC denied the claim and the Millers sued. *Miller*, ¶¶ 5-6. TIC moved for summary judgment based upon a policy coverage exclusion that limited coverage to "easements of public record." *Miller*, ¶¶ 1, 6. The policy defined "public records" as "those records which by *law* impart *constructive notice* of matters relating to said land." *Miller*, ¶ 12 (emphasis in original). The district court granted TIC's motion, holding that TIC had no duty under Montana law or the policy to review the records at the City of Helena Engineer's Office and Water Department. Because TIC complied with the terms of the insurance contract and Montana law, TIC was entitled to judgment as a matter of law. *Miller*, ¶ 1. We affirmed. *Miller*, ¶ 23.

10

¶24 As in *Miller*, the 2008 commitment at issue here states that the policy will except "[e]asements, claims of easement or encumbrances which are not shown by the public records." It also states "Public Records" means "title records that give constructive notice of matters affecting your title according to the state statutes where your land is located." There were no "public records" on file during Foster's search that established Harpole Road as a county road.

¶25 Based upon the record in this case and our ruling in *Miller*, we conclude the 1903 Road Record document was not a "public record" at the time of Foster's search. It also bears noting that Harpole claims to have spent hundreds of hours over three months researching the history of Harpole Road in four different cities. It would be wholly unrealistic to require the expenditure of hundreds of hours and travel to four cities in order for a search of records to be deemed a "reasonably diligent search."

¶26 Having determined that Foster's conduct satisfied the *Malinak* standard, we conclude Foster did not breach a duty to Harpole in that her search was a reasonably diligent search of public records. We therefore affirm the District Court's dismissal of Harpole's common law negligence claim. As there was no breach of duty, we need not address the remaining elements of a negligence claim or Harpole's claims regarding expert testimony.

*Negligent Misrepresentation*

¶27 Harpole also argued to the District Court that both the written preliminary title commitment and Foster's oral statements vis-à-vis the status of Harpole Road constituted

negligent misrepresentations. The District Court ruled that the written preliminary title commitment could not form the basis for Harpole's negligent misrepresentation claim based upon § 33-25-111(2), MCA. We do not address this claim as Harpole does not present an apparent argument that the District Court's ruling on this issue is incorrect. We therefore turn to the question of whether the District Court erred in concluding that Foster's oral statements pertaining to the status of Harpole Road did not constitute negligent misrepresentation.

¶28 In *Osterman v. Sears*, 2003 MT 327, ¶ 32, 318 Mont. 342, 80 P.3d 435, we stated that the elements of the tort of negligent misrepresentation are:

> a) the defendant made a representation as to a past or existing material fact;
> b) the representation must have been untrue;
> c) regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true;
> d) the representation must have been made with the intent to induce the plaintiff to rely on it;
> e) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation;
> f) the plaintiff, as a result of its reliance, must sustain damage.

¶29 Montana's standard for tortious negligent misrepresentation had been previously based upon Restatement (Second) of Torts § 552 (1997) since *Brown v. Merrill Lynch, Pierce, Fenner & Smith,* 197 Mont. 1, 12, 640 P.2d 453, 458-59 (1982). There, we adopted a "reasonable care" test for determining whether one who in the course of business has supplied false information to another in the conduct of his business transactions should be held liable for negligent misrepresentations. Subsequently, we set forth the six-prong list of elements in *Kitchen Krafters v. Eastside Bank*, 242 Mont. 155,

12

165, 789 P.2d 567, 573 (1990), *overruled on other grounds, Busta v. Columbus Hosp.*, 276 Mont. 342, 916 P.2d 122 (1996), and applied this test to allegations of negligent misrepresentation against a title insurance company in *Yellowstone II Dev. Group, Inc. v. First Am. Title Ins. Co.*, 2001 MT 41, 304 Mont. 223, 20 P.3d 755. We have since applied these six prongs in numerous cases, including *Osterman*.

¶30 The second prong of the foregoing test requires that the subject misrepresentation be untrue. The District Court concluded that "Ms. Foster's statement that her search revealed that Harpole Road was not an officially dedicated county road and there was no recorded easement establishing Harpole Road was undisputedly truthful." We agree with the District Court. Foster's search did not reveal to her that Harpole Road was a county road. While additional research led the County Attorney to determine otherwise, this does not render Foster's statement untruthful when it was made. The same analysis applies to Foster's statement that an easement did not exist. Moreover, we note that had the District Court continued its analysis of the *Osterman* elements, Harpole would have been unable to satisfy the third prong because the evidence established that Foster had "reasonable grounds for believing [what she told Harpole] to be true," and Harpole presented no argument to the contrary.

¶31 We deem it unnecessary to decide here whether Restatement (Second) of Torts § 522 or the *Osterman* test should be applied to Harpole's claim against the title companies for negligent misrepresentation, as we conclude that under either the *Osterman* test or the "reasonable care" Restatement test, Harpole's negligent

13

misrepresentation claim would fail under the facts before us. Consequently, we affirm the District Court's ruling that Harpole did not satisfy the elements of a negligent misrepresentation claim and the title companies were entitled to summary judgment on this claim.

¶32 *In a companion case, did the District Court abuse its discretion when it required Harpole to post an appellate bond?*

¶33 In Harpole's opening brief, he asserts he is appealing the District Court's ruling requiring that he post an appellate bond in a companion case. However, he fails to proffer any argument on this issue as required by M. R. App. P. 12(f). Consequently, we decline to reach this issue.

## CONCLUSION

¶34 For the foregoing reasons, we affirm the District Court's grant of summary judgment in favor of the title companies. We decline to address Harpole's issue pertaining to a bond for costs on appeal.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE