FILED

December 9 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0860

DA 13-0860

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 325

ROBERT and THERESA JAMES, Husband and Wife,

       Plaintiffs and Appellants,

  v

CHICAGO TITLE INSURANCE COMPANY,
a corporation, and JOHN DOES 1-99,

       Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
                   In and For the County of Lewis and Clark, Cause No. CDV 2013-70
                   Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

       For Appellants:

          Mark Lancaster, Luxan & Murfitt, PLLP, Helena, Montana

       For Appellees:

          Gregory G. Schultz, Law Offices of Gregory Schultz, P.C.,
          Missoula, Montana

                                  Submitted on Briefs:  November 6, 2014
                                          Decided:  December 9, 2014

Filed:

                                                 Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Robert and Teresa James appeal from the District Court's Order on Cross-Motions for Summary Judgment entered October 18, 2013. We affirm.

¶2 We restate the issue for review: Whether the District Court properly granted summary judgment to Chicago Title Insurance Company on the Jameses' claim, under a title insurance policy, that they lacked a right of access to their real property.

## BACKGROUND

¶3 In 2006 the Jameses bought Lot 71 of Spring Creek Ranch, a rural subdivision in Lewis and Clark County that was platted in 1988. A County road known as Skelly Gulch Road passes near Lot 71, and a road or two-track known as Aspen Grove Road passes from the County road, through Lots 72 and 73 to reach Lot 71. The 1988 recorded plat of the subdivision does not depict any access road easements in the subdivision. However, the developers separately recorded a "Declaration of Easements" that provided in part:

> Each lot of the Spring Creek Properties shall have appurtenant thereto access by way of an easement and right of way for nonexclusive use sixty (60) feet in width. As of the date hereof, the location of certain of said easements has not been determined. Grantor reserves the right to determine the location of all such nonexclusive access easements, the centerlines of which shall, insofar as practicable, coincide with the boundaries between lots in the Spring Creek Properties. Grantor shall consider, in determining such location, the topography and soil conditions of the land concerned. Grantor represents that although certain roads and roadways already exist within the Spring Creek Properties, and Grantor, solely within its discretion, may choose to build or improve certain roads, the Grantor is under no obligation to do so.

This was the easement or access that the Jameses acquired when they purchased Lot 71.

¶4     At the time of purchase in 2006, Chicago Title issued a "standard owner's policy of title insurance." The cover sheet of the policy includes Item 4, which insures against loss or damage by reason of "lack of a right of access to and from the land." Jameses allege that since they purchased the Lot it became "unmarketable due to lack of access." Based upon their contention that they had no "legal right" of access to Lot 71, they made a claim against Chicago Title under the policy. The Jameses do not contend that there was any intervening event by a third party such as a road closure, or a claim or action challenging their right to access Lot 71 via the Aspen Grove Road or by any other route. Although there is more than one way to reach their lot, one route they have used requires driving on lands outside the subdivision. The only challenge to their right of access was raised by the Jameses themselves. Chicago Title denied the claim under the policy.

¶5     Jameses filed suit against Chicago Title in January 2013 contending that the title insurance policy required the company to provide them "legal" access to Lot 71. The Jameses differentiate between "a right of access" to their lot and "legal access" to their lot. They contend that they are entitled to "legal access," which requires a surveyed and platted right of way dedicated to their use. As their attorney argued to the District Court, "[t]o have legal access to property, there needs to be some piece of paper of record that provides access." They contend that Chicago Title is required to provide them that access. The suit claims that Chicago Title committed breach of contract, negligence, negligent representation, breach of the covenant of good faith and fair dealing, and insurance bad faith.

¶6    Shortly after suit was filed, Chicago Title confirmed with the owners of Lots 72 and 73 that they do not object to the right to access to Lot 71 by crossing their property on Aspen Grove Road. The owners further agreed that the Jameses had the right to access Lot 71 over Aspen Grove Road based upon the Declaration of Easements that the developer recorded in 1988. At the request of Chicago Title the owners of Lots 72 and 73 executed written acknowledgements of their recognition of the access right, depicted on an attached aerial photograph, and Chicago Title recorded those acknowledgements.

¶7    After a period of discovery both sides moved for summary judgment and the District Court granted summary judgment to Chicago Title. After determining there were no issues of material fact, the District Court held that the Jameses failed to establish that the title insurance policy entitles them to "legal access" to their lot. The District Court found that the Jameses' argument required the addition of language to the title policy, which insures only "a right of access" and which makes no reference to the "legal access" that they desire. The District Court reasoned that under the terms of the title policy, Chicago Title has no duty to defend a claim "created by" the Jameses.

¶8    On appeal the Jameses argue that the easement dedication by the developer in 1988 is not sufficient to provide them with access to their lot, and that nothing "put them on notice that they were buying only a goat path to their property." They contend that they cannot identify a legal access route to the property, and if they had known that Aspen Grove Road was the access, they "could have walked away" in 2006 instead of making the purchase. The Jameses contend that they have no right of access to Lot 71, and that the recorded easement was a "nullity" at the time they bought the lot. Further,

4

they contend that the access acknowledgments by the other lot owners are insufficient and Chicago Title unfairly changed the legal status of their access rights without consulting them. This, they contend, only "minimally complied" with Chicago Title's obligation under the policy.[1]

## STANDARD OF REVIEW

¶9 This Court reviews a district court's decision on a motion for summary judgment under M. R. Civ. P. 56, using the same standard as the district court, to determine that there is no genuine dispute as to material fact, and that the district court correctly applied the law. *Harpole v. Powell County Title Co.*, 2013 MT 257, ¶ 15, 371 Mont. 543, 309 P.3d 34.

## DISCUSSION

¶10 *Issue: Whether the District Court properly granted summary judgment to Chicago Title Insurance Company on the Jameses' claim, under a title insurance policy, that they lacked a right of access to their real property.*

¶11 An easement is a non-possessory interest in land that gives a person the right to use the land of another for a specific purpose, *Ponderosa Pines Ranch v. Hevner,* 2002 MT 184, ¶ 16, 311 Mont. 82, 53 P.3d 381, and it may be created by an instrument in writing, *Davis v. Hall*, 2012 MT 125, ¶ 19, 365 Mont. 216, 280 P.3d 261. The transfer of a parcel of real property transfers easements appurtenant to it, *Wills Cattle Co. v. Shaw,* 2007 MT 191, ¶ 26, 338 Mont. 351, 167 P.3d 397, and a recorded document creating an easement imparts constructive notice of its contents. *Davis*, ¶ 22. The general principles

---

[1] The Jameses contend that Chicago Title's obligation to them was to pay them money up to the policy limits; take action to clear the title defect; or show that the title (access) issue does not exist.

5

of contract interpretation apply to documents creating easements, and a person who grants an easement also grants whatever is necessary for its use. *Watson v. Dundas*, 2006 MT 104, ¶¶ 20-21, 332 Mont. 164, 136 P.3d 973. When a declaration of easement does not specify a precise location for its use, a court will deem an existing road as the easement, *Ponderosa Pines*, ¶ 27, and a court may determine the parameters of an easement by the use made of it, *Wills Cattle*, ¶ 26.

¶12 A document creating an easement may reference a separate document that adequately describes the easement's contents. *Blazer v. Wall,* 2008 MT 145, ¶¶ 40, 44, 343 Mont. 173, 183 P.3d 84. The referenced document must allow a purchaser to determine with reasonable certainty the beneficiary of the easement, the person burdened by the easement, and the scope of its use. *Blazer*, ¶ 67. A referenced document must give notice to the owner of the property burdened by the easement, and the dominant and servient tenements must be ascertainable with reasonable certainty. *Davis*, ¶ 20. Easements like the one in the present case which grant a right of access but do not specify its exact location, were once common and appear in several reported cases. *Ponderosa Pines*, ¶ 26; *Clark v. Pennock*, 2010 MT 192, ¶¶ 5-6, 357 Mont. 338, 239 P.3d 922; *Watson*, ¶ 19 (easement over the "historic road now traversing Section 27"). Failure to precisely describe the location of an easement is not necessarily fatal to its validity. *Yorlum v. Lincoln Co.*, 2013 MT 298, ¶ 22, 372 Mont. 159, 311 P.3d 748.

¶13 The Jameses contend that their title policy should be construed to effectuate their reasonable expectations regarding access to Lot 71. Their expectation, as they explain it on appeal, is that they obtained no access rights whatsoever when they bought their

property in 2006, and that they expected that Chicago Title would provide them with a surveyed and depicted right of way for an access easement.

¶14 The reasonable expectations doctrine provides that the objectively reasonable expectations of an insurance purchaser regarding the terms of a policy may be honored, even if a "painstaking study" of the policy would have negated those expectations. *Miller v. Title Ins. Co.*, 1999 MT 230, ¶ 21, 296 Mont. 115, 987 P.2d 1151; *Meadow Brook LLP v. First American Title*, 2014 MT 190, ¶ 15, 375 Mont. 509, 329 P.3d 608. However, if policy language is clear the insured's contrary expectations will not be enforced. *Meadow Brook*, ¶ 16; *Fisher v. State Farm*, 2013 MT 208, ¶ 19, 371 Mont. 147, 305 P.3d 861. We construe insurance policies as an issue of law, using the usual, common sense, meaning of terms and words used. *Fisher*, ¶¶ 13, 15. A court may not adopt a construction that would "do violence" to the language of the policy. *Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 32, 354 Mont. 15, 221 P.3d 666.

¶15 In this case the District Court correctly found that the language of the policy was clear—it insured against loss from not having "a right" of access. The Jameses clearly had a right of access under the declaration of easements filed in 1988, and that right was confirmed by the acknowledgements executed by their neighbors. There is nothing in the policy to support their contention that they acquired no access when they bought the lot, but rather insured themselves of access to be defined in the future through the title policy. Courts will not act to distort policy language in the face of a reasonable interpretation of the policy provision. *Giacomelli*, ¶¶ 31-32.

¶16    The District Court properly applied the law and the facts in this case and properly

granted summary judgment to Chicago Title.

¶17    Affirmed.


                                        /S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE